ELIZABETH AIKEN, plaintiff in error, vs. WILLIAM P. CATO, defendant in error.

[1.] Before the sayings of one person should be received in evidence against another, it ought to have become clear beyond a reasonable doubt, that the other claims under him, or bears to him some relation of privity.

[2.] When a witness is called and examined even to only a formal point, by one party, the other party has the right to cross-examine him as to all points.

[3.] A son-in-law brought trover against the mother-in-law for a slave which he claimed as a gift to his wife from the deceased father-in-law.

*Aiken vs. Cato.*

*Held,* that a son of the deceased father-in-law, had no interest in the suit, and was, therefore, competent to testify for the mother-in-law.

Trover, in Webster Superior Court. Tried before Judge KIDDOO, April Term, 1857.

This was an action of trover, brought by William P. Cato, against Elizabeth Aiken, for the recovery of a negro girl named Patsey.

Defendant pleaded the general issue.

The case was tried on the appeal.

Plaintiff introduced *Ferdinand S. Saunders,* who testified that in the Spring of 1854, Jacob C. Aiken, then in life, told him, at his, Aiken's mill, that he had given the negro girl Patsey to plaintiff. That in the Fall, he intended to give wife of plaintiff more; that he had only loaned plaintiff the old negro woman Lucy; that plaintiff married the daughter of Jacob C. Aiken, in December, 1853, had possession of Patsey sometime in January, 1854. The value of said girl is now $850. In 1855, her hire was worth $60; in 1856, her hire was worth $75.

*A. G. Elam* testified that he saw Patsey in plaintiff's possession not long after his marriage; that she remained in his possession up to the time of his wife's death, which occurred in the latter part of the year 1854.

*William S. Aiken,* witness for plaintiff, testified that, just before the commencement of this action, he heard plaintiff demand the negro in dispute, from defendant, and defendant refused to give her up; that at that time defendant said to plaintiff, "You know we never gave you Patsey," plaintiff replied, "I know you did not, but Mr. Aiken said he intended to give me a little negro, and my wife preferred Patsey." that defendant replied, "Mr Aiken never owned Patsey, and had no right to give her away, she was my property and not the property of Mr. Aiken."

Defendant then proposed to cross-examine the witness as to all the circumstances of Patsey's going into the possession of plaintiff.

Counsel for plaintiff objected. The Court sustained the objection, and defendant's counsel excepted.

Plaintiff here closed.

Defendant's counsel, then proposed to recall William S. Aiken, and put him up and examine him as their own witness.

Plaintiff's counsel objected upon the ground, (not disputed,) that he was the son of defendant, and Jacob C. Aiken, deceased, and that defendant, plaintiff and said William S. were the distributees of said Jacob C.

The Court sustained the objection, and excluded the witness on the ground of interest. To which decision defendant's counsel excepted.

*James Cato*, sworn, for the defendant, testified that he was present when Patsey went home with plaintiff, in the early part of January 1854. Mrs. Cato, then in life, the daughter of defendant and wife of plaintiff, asked her mother to let Patsey go home with her and help her about the lard, that ·they were going to kill hogs; that Mrs. Aiken made some objection, after some conversation, Mr. Aiken remarked, "she can go and help you about the lard, and stay there a while." Plaintiff's wife died about August, 1854, leaving no children, the next day or two after her death, he met Patsey going from plaintiff's to defendant's. He asked plaintiff if he sent her home? plaintiff replied, yes, he would not have her if they were to give her to him. The negro remained in the possession of defendant.

*Cross-examined.*—Mr. Aiken had at the time of his death, 25 or 30 negroes, he died in the year 1854, a short time before the death of his daughter, Mrs. Cato.

*Butt L. Cato*, for defendant, testified that soon after the death of plaintiff's wife, he told witness, when asked why he

Aiken vs. Cato.

sent the negro Patsey back, that he would not have her if they were to give her to him.

Defendant then swore plaintiff, William P. Cato, who testified that he did not remember who was present at the time the girl Patsey went into his possession. Mr. Jacob C. Aiken did not, at his house, a few days before his marriage, tell him that he would not give him any negroes, but that he would settle them upon his, Cato's wife; Jacob C. Aiken told him that he could not give him any field hands that year, but that he would give him either of the little negroes, that he might prefer, and his wife preferred Patsey, Mr. Aiken saying that he would give him other negroes the next Fall. At the time witness (plaintiff) went to make the demand for Patsey, Mrs. Aiken asked him what right he had to the negro. Witness told her that Mr. Aiken gave Patsey to him; she replied, that he did not, that he had no right to Patsey himself, that she did not think that Mr. Aiken would give away what was not his own. Witness replied, that he had given him one, and that his wife preferred Patsey. Witness did tell James Cato that he had sent the negro home; that he would not have her and be bound to keep her.

After the death of my wife, Mrs. Aiken, the defendant, asked me, on the day of my wife's burial, if I had any use for Patsey? witness told her no; she said send her back, and she would make arrangements next Fall; did not say what kind of arrangements she would make, but gave witness to understand that she would divide the property the next Fall; Mr. Aiken did not tell witness that he did not own a part of said negroes, and that they were settled upon his wife.

*Cross-examined.*—The negro was sent back after the death of witness' wife, on account of the conversation with Mrs. Aiken, when she said she would make arrangements next Fall, I did not know, until advised, that the mere sending of property home, constituted a gift in law.

The jury found for the plaintiff.

Whereupon defendant's counsel moved for a new trial on the following grounds, to-wit:

1st. Because the Court erred in charging the jury, that the sayings of the donor Aiken, after he parted with the possession of the property could not be received, to change and vary the original contract, but they were admissible as against him, to show what was the original contract, or to show that it was a gift, and in charging the jury upon the evidence of Saunders, as to the sayings of Jacob C. Aiken when he was not in possession of the property "that his sayings were evidence of a gift, but that nothing he afterwards said could come in to disprove its being a gift."

2d. That the Court erred in refusing to allow defendant to cross-examine the witness, William S. Aiken, as to all the facts of the case, he being called to prove a demand only, and defendant's attorney, so notified, did not object to his being put up for that purpose.

3d. That the Court erred in refusing to allow defendant to call and examine said William S. Aiken, as her own witness.

4th. The Court erred in rejecting the declarations of Jacob C. Aiken, proposed to be proved by defendant, made after the property passed out of his possession, that he had not given, but only loaned, the negro Patsey, to plaintiff.

5th. That the verdict of the jury is contrary to the evidence.

6th. That the verdict is contrary to law.

7th. That the testimony of Ferdinand C. Saunders, as to the sayings of Jacob C. Aiken, when he was not in possession of the negro in dispute, was illegal.

The Court refused the motion for a new trial, and counsel for defendant excepted.

TUCKER & BEALL, for plaintiff in error.

McCoy & HAWKINS, for defendant in error.

*By the Court.*—Benning, J. delivering the opinion.

Disposing of the exception to the judgment overruling the motion for a new trial, will be disposing of all the exceptions in the case.

The question, therefore, may be stated to be this, was any one of the grounds of the motion for a new trial a good ground ?

A part of the first of those grounds, was as follows : "In charging the jury upon the evidence of Saunders as to the sayings of Jacob C. Akin, when he was not in possession of the property," that his sayings was evidence of a gift, but that nothing he afterwards said, could come in to disprove its being a gift."

The defendant in the action, Elizabeth Akin, was, it is true, the widow of Jacob C. Akin; but it is not clear that she claimed as *heir* to him ; it rather seems, that she did not. What took place at the interview between her and the plaintiff, Wm. P. Cato, when he demanded of her Patsey, the slave sued for, before the commencement of the suit, is related by a witness, as follows—; "Defendant said to plaintiff; "you know we never gave you Patsey." Plaintiff replied ; "I know you did not, but Mr. Akin said, he intended to give me a little negro girl, and my wife preferred Patsey. That defendant replied; "Mr. Akin never owned Patsey, and had no right to give her away. She was my property, and not the property of Mr. Akin."

It does not appear that Cato made any objection, or any reply of any sort, to this latter statement of Mrs. Akin.

Now, it cannot be said in the face of this evidence, that it is clear beyond a reasonable doubt that the title by which, Mrs. Akin was defending the action, was a title which she derived by inheritance from "Mr Akin," her deceased husband ; and was not some title which she had in her own right. And it certainly may be assumed, that the sayings of one person ought not to be allowed to affect another, un-

less it is clear beyond a reasonable doubt, that that other claims through, or under, him, or stands in privity of some sort, with him.

[1.] This part of the ground then, was in our opinion good.

And what has been said of this part, sufficiently disposes of the other part.

The second ground of the motion was, in our opinion, good.

[2.] "In England, when a competent witness is called and sworn, the other party will, ordinarily, and in strictness, be entitled to cross-examine him, though the party calling him does not choose to examine him in chief; unless he was sworn by mistake; or, unless an immaterial question having been put to him his further examination in chief has been stopped by the Judge." *Green Ev.*, § 445.

This, we think, is a correct statement of what the *English* law is, on the point involved in this ground; and what the English law is on that point, our law is, for all the law that we have on the point, is English law. Such as we have by adoption of English law.

[3.] As to the third ground. William S. Akin had no interest in the event of the suit. He was an heir of Jacob C. Akin, so was Mrs. Akin, the defendant, who was Jacob's widow; so was Cato, the plaintiff, who was Jacob's son-in-law. But Cato did not sue as the *administrator* of Jacob; nor was Mrs. Akin sued as the *administratrix* of Jacob. Therefore, neither he, nor she, *represented* William S. Akin, in respect to his rights as an heir of Jacob. But if neither represented him, then a judgment in favor of either, could not be evidence for, or, against, him, in any suit between him, and either, in respect to the negro; or be evidence for, or, against, any administrator of Jacob C. Akin, in any suit between such administrator, and either, in respect to the negro. A judgment in favor of Mrs. Akin, would not have been at all, a judgment in favor of Wm. S. Akin. It would not have

been a judgment to do him the least good. Wm. S. Akin, then, was a competent witness.

The sayings of Jacob C. Akin, the rejection of which is complained of in the fourth ground of the motion, were sayings *not* against his interest. When a man says of that which another has in possession, that he has loaned it to him, he says rather what is in favor of his interest, than what is against it.

The seventh ground has been sufficiently disposed of, in the disposition made of the first ground.

We think, that there is enough in the first, second, and third grounds, to require a new trial. A new trial is accordingly ordered.

This makes it unnecessary to consider the remaining two grounds, the fifth and sixth, and they are such, that it may be well enough to leave them without further notice.

Judgment reversed.