JOEL W. PERRY, administrator *de bonis non*, plaintiff in error, *vs.* JOHN B. MULLIGAN, defendant in error.

1. The sufficiency of the bond in attachment cases, in respect to the solvency of the surety, is matter primarily for the consideration of the officer issuing the same, and not for the superior court on the trial of the cause, especially where the defendant has received notice of the suit, and has pleaded to the merits.

2. After a party has taken and enjoyed large benefits from an award, it is too late for him to object thereto, on the ground that his agent had no written or other legal authority to bind him by the submission.

3. The declaration in attachment may be amended by striking out "Georgia, Decatur county," and inserting "Georgia, Early county," the true venue of the cause being Early county, and the trial pending therein.

4. If part of the answer to an interrogatory be read by the party who sued out the interrogatories, he should read at least all of that answer; but if the other side afterwards read all the answers, and the right to conclude the argument does not turn on his being forced to do so, no harm will have been done, and a new trial will not be granted on an error which proved to be harmless.

5. One party to the record is not a competent witness to prove transactions touching the issue in the case, between himself and the other party who is dead. If such party be offered as a witness by the other side, and be examined only in respect to matters which did not transpire between the witness and the deceased, while the cross-examination should be full in respect to the matters so inquired about on the direct examination, it should not operate as a license to the party examined to testify to transactions which took place between him and deceased, such as delivery of property, and payment of money, to deceased in compliance with an award, the delivery and payment being vital issues in the case.

6. If the agent of the dead party has been examined as a witness in the case by interrogatories, the other party may testify in respect to transactions between himself and such agent, though the agent be dead at the time of the trial.

7. A new trial should not be granted on newly discovered evidence which is not admissible and could not affect the merits of the case.

8. The charge to the effect that the whole issue in the case was confined to compliance or non-compliance with the award, and that neither party could go behind it, under the facts of this case, was right.

9. The court, in a civil case, may receive the verdict in the absence of the defendant and his counsel, especially if they were called into court before the verdict was received, and did not respond.

Attachment. Estoppel. Amendment. Evidence. New Trial. Arbitrament and Award. Witness. Interrogatories.. Practice in the Superior Court. Before HERBERT FIELDER, Esq., Judge *pro hac vice.* Early Superior Court. April Term, 1876.

Reported in the opinion.

E. C. BOWER, by Z. D. HARRISON, for plaintiff in error.

A. HOOD; J. C. RUTHERFORD, for defendant.

JACKSON, Judge.

B. W. Keaton, about the close of the war, thinking he had to leave the state on account of apprehension of danger from the federal power, sold his plantation and stock thereon, to Mulligan, for $12,000 in gold. Shortly thereafter, he became dissatisfied with the trade, and through B. O. Keaton, his father and agent, the matters in dispute between himself and Mulligan were referred to arbitrators. They made an award whereby B. W. Keaton was to return to the plantation and retain what of personalty was on it, and Mulligan was to account for what he had sold off the place—he having had a large sale of mules, etc., etc., during his occupation of the place, and Keaton to pay him $1,800.00. After the award, it appears that B. W. Keaton re-possessed himself of the plantation and the property thereon, but refused to pay the $1,800.00 which was awarded to Mulligan, on the ground that the personalty was never restored to him, or that sold accounted for by Mulligan. Whereupon Mulligan sued for the money, attaching B. W. Keaton's plantation, and filing a declaration in attachment. On the hearing the jury found for the plaintiff $1,800.00, and B. W. Keaton having died *pendente lite,* his administrator, Perry, moved for a new trial on various grounds, the motion was overruled, and the defendant excepted.

1. The first error assigned is, that affidavit having been made that the surety on the attachment bond was weak, the

court below refused to strengthen it.   We think that this is matter for the officer who issued the attachment under our Code, section 3271, and we have so ruled in 55 *Ga.*, 454. Besides, the party had appeared and was fighting the case on the merits, and had been for years.   Certainly this was no ground at all for a new trial of the case on its merits.

2. The next error assigned is, that B. O. Keaton had no written or other legal authority to bind B. W. Keaton by the submission, and hence the award was illegal.   As B. W. Keaton had received property and enjoyed benefits under this award, we think that it did not lie in his mouth to object to the submission on any ground in respect to want of authority in his agent to submit the case.   He ratified the submission by reaping fruits from the award.

3. Again, it is objected that the court allowed the plaintiff, in reading interrogatories and their answers, to read only a part of one answer to one question.   We think that this was wrong, but as the defendant afterwards read it all, and as he did not thereby lose the conclusion of the argument, having himself introduced much evidence, it turned out to be a harmless error, and affords no legal reason for a new trial.

4. The court also allowed the declaration in attachment to be amended by striking out of the venue thereof, " Georgia, Decatur county," and inserting in lieu thereof, " Georgia, Early county," the county intended to be originally inserted, and where the attachment was pending, and to which it had been regularly returned.   We think that the court did right.

5. The defendant introduced the plaintiff as a witness, and examined him about a certain advertisement of the property he had sold while in possession of the place, but in the direct examination never alluded to any transaction, or occurrence, or conversation about the business between the intestate and the plaintiff.   On the cross-examination, the plaintiff was allowed to testify, over defendant's objection, about various transactions between the deceased and

himself, and swore that he delivered much property, indeed, all that was unsold, to defendant's intestate, and paid defendant's intestate the money value of that sold by him. This went to the vitals of the case. The question in dispute was, had Mulligan returned the unsold personalty to Keaton, and paid him for the part sold? He was permitted to testify to this point, and thus to prove his whole case, when the other party to the transaction was dead and could not confront him. It is clear that he could not offer himself as a witness to prove this; the question is, can he, when the other side put him up to prove by him matters outside of any conversation or dealing between the two parties, go himself, *then*, into that forbidden and illegal field into which he could not have entered otherwise? He had a right to explain fully—to the utmost extent—the whole business about which he was interrogated directly; but we think that he could not prove the delivery of property to defendant, or the payment of money to him, no question on the direct examination having been asked him on either point. Especially must this be so, when, as in this case, defendant offered not to introduce the advertisement about which plaintiff had testified, and to withdraw him altogether as a witness. We think that the court erred in giving this latitude to the cross-examination of the plaintiff by his own counsel, especially as the court did not allow defendant to withdraw him as a witness under the facts in the record. This ruling does not conflict with the principle heretofore decided in 18 *Ga.*, 573, 23 *Ga.*, 154, 26 *Ga.*, 537, and others, that a witness examined in chief on one point may be cross-examined on all. Those cases rule that he may be cross-examined on all legal points, to which it was legal to examine him, and which he was *competent to prove.* There was evidence tending to show that Mulligan had complied, on his part, with the award outside of his own testimony; but the evidence on the point was conflicting, and we cannot say what might have been the verdict, if this illegal testimony of the plaintiff, directly to the point in issue, had been excluded. This testimony

ATLANTA, JANUARY TERM, 1877.    483

Perry, adm'r *de bonis non,* vs. Mulligan.

may have made the verdict, and we must grant a new trial on this ground.

6. B. O. Keaton, the agent of B. W. Keaton, the intestate, also was dead at the trial, and Mulligan was examined as to payments made to him as agent; but inasmuch as his, B. O. Keaton's, interrogatories were in court, and he had been fully examined in the case, we can see no objection to Mulligan being also heard about matters between them. B. O. Keaton had told, or could and ought to have told, all that he knew about the whole case, payments and all; why should not Mulligan be allowed to tell all that he knew in respect to transactions between the two?

7. 8. We think, too, that the charge of the judge was the law of the case. He told the jury not to go behind the award, but to inquire if it had been carried out by Mulligan; if it had, then that they ought to make the other party carry it out; that if Mulligan had not made a clean delivery of the property, or payment of money, that they ought to deduct the deficiency from his $1,800.00, and, in case the deficiency amounted to $1,800.00, then they ought to find for defendant. Nor do we see any error in the modulation of the judge's voice, as he explained it. On the contrary, we think that the case was fairly and fully tried, and see but the one error in all this multiplicity of points set out in this voluminous record. So, too, as to the refusals to charge.

There was no error in refusing the new trial on the ground of the newly discovered testimony. It could not have been admitted if it had been present.

9. Nor was there error in receiving the verdict in the absence of defendant and his counsel. It was their business to be in court when the judge was in court, and he was quite indulgent to have them both called, and to stop awhile to see if they would answer. True, it was dark; but light or dark, parties and counsel must see to it that they are near when the judge moves, and be ready to move with him. On the whole, we rather regret the necessity to send this case back on a single error in so long a record; but as the testimony

of Mulligan, that he delivered all the unsold property back to Keaton, and paid him for that sold, went to the heart of the case, and might have controlled the finding, and as the other evidence does not absolutely require the verdict, we feel that justice demands a new trial.

Judgment reversed.