HOWARD *et al.,* by next friend, *v.* CASSELS.

1. Where a testamentary guardian enters into a contract for the purchase of land, pays a part of the purchase-money with the funds of his wards, and executes a promissory note in his representative capacity for the balance, on a suit instituted by the vendor to obtain a judgment on the note the minor wards are not necessary parties. If the contract thus entered into is authorized by law or the terms of the will, the guardian, being the legal representative of the wards, is the only necessary party defendant in such a case, and a judgment against him binds their property in his hands; if the execution of such a contract is not within the power of the guardian, it may bind him in his individual capacity, but can not in any event bind the property of the wards.

2. While the wards may have a right of action against their guardian for an illegal and unauthorized investment of funds belonging to them, by which such funds are lost, and this right of action may extend to any person who, with a knowledge of the facts, received the funds, yet the wards can not maintain a proceeding in which, while claiming the fruits of an alleged illegal investment, they deny the vendor's right to proceed against the property he sold for the balance of the purchase-money. If they ratify the investment and claim the property purchased, they ratify also the proceeding by the vendor to collect the balance of the purchase-money out of the property sold. Such a contract is not several in its terms, and must be ratified in its entirety or repudiated altogether.

Argued May 23, — Decided July 27, 1898.

Equitable petition. Before Judge Candler. DeKalb superior court. August term, 1897.

Helen S. Howard, Alexander R. Howard and Patrick Mell Howard, by their next friend, brought their petition against Pendleton, Cassels and Inman. A demurrer by Cassels was sustained, and petitioners excepted. They alleged: They are minor children of Sarah M. Howard, who died leaving a will under which George W. Howard was appointed their testamentary guardian, with certain defined powers, and he took possession of the property devised to them and has since managed it. Said guardian purchased for them from Pendleton a tract of land described, for $2,500, of which sum he paid, from their property, $2,000, giving, as their testamentary guardian, his note for the balance, $500, with interest at eight per cent., although he had in his possession as testamentary guardian sufficient of their property to have paid in full the pur-

chase-price of the land; and he took from Pendleton his bond for title agreeing to convey the land. The note was traded by Pendleton to Inman, who had due notice that it had been given by Howard as testamentary guardian for the petitioners, and that it sought to bind property belonging to him. It was not paid at maturity, and Inman brought suit on it. At the February term, 1897, of the superior court, judgment by default was rendered, and execution issued for $500 principal and $77 interest and costs, and the land described was levied on, advertised, and sold to Cassels, who was the highest bidder, and whose bid was for $425, which sum he paid, took a deed from the sheriff, and went into possession of the land. The judgment was void, and all subsequent proceedings thereunder void, in this, that no service, as required by law, was ever had on said minors, of the suit on which the judgment was predicated, as appears on the face of the proceedings. They had a good and valid defense to the suit, viz., that the note did not bind the minors nor their property, because under the will their testamentary guardian did not have the power to encumber their property in any manner. By their next friend they have in good faith and in terms of the law tendered to said Pendleton $577 and legal interest to the date of tender, which sum they secured from their guardian, the same being the amount of the said note and interest thereon, and Pendleton refused the tender. At the time of the tender they demanded, by their next friend, possession of and good title to the land from Pendleton. The tender was and is continuous; petitioners, by their next friend, being ready to pay Pendleton said sum of $577 and legal interest to the date of the tender at any time Pendleton will give them possession and good title to the land. They pray that the judgment be declared void against them or their property, and set aside, and the sheriff's deed canceled; that Pendleton be required to accept the tender, and to pay Cassels $425, and to pay the balance due on the note to Inman, and required to make good titles to the land to the petitioners or their testamentary guardian, and to deliver possession of the land and the note to them; that all deeds that may have been made in consequence of the judgment be canceled, etc. The will re-

ferred to, as appears from the copy attached as an exhibit, appoints George W. Howard, the husband of the testatrix, guardian of her children (the plaintiffs), to whom her entire estate, both real and personal, is devised, and provides as follows: "It is my will and desire that he shall be empowered without order of court to sell any part of my estate as testamentary guardian of my children, and reinvest or not as he may see proper; in fact, it is my will and desire for him to manage the property herein willed as he may decide is to the best interest of my children as above named." The bond for title was to George W. Howard, testamentary guardian of children of Sarah M. Howard, naming them.

The demurrer was upon the grounds: (1) The petition states no cause of action and no grounds for relief, legal or equitable, against defendant. (2) The law does not require that minors should be personally served in a suit against their guardian; and the petition does not state wherein service on the minors was defective, and does not set forth what the proceeding was, nor what the service was. (3) The defense stated is not a legal defense. (4) The plaintiffs can not claim the benefits of the purchase set forth, and that it vests title in them, and at the same time escape the obligations of the contract under which they claim such benefits.

*Townes & Nicholes,* for plaintiffs.
*Arnold & Arnold,* for defendant.

LITTLE, J. The plaintiffs seek to set aside a judgment in favor of Inman *v.* Geo. W. Howard, their testamentary guardian. They allege that they were not made parties to the action; that they had a good defense to it, which was, that the note sued on was given by Howard, their guardian, in his capacity as such, and did not bind the plaintiffs, nor should such judgment be a lien on their property, because the testamentary guardian did not have the power to encumber the estate of the minors in any manner; and referring to the judgment, they pray that it be declared null and void as against them and their property, and that it be set aside. We can not see the necessity for the decree prayed for. If it be true, that the guardian

had no legal power to enter into a contract which would bind
the property of his wards, then they were not bound by such
contract, nor would it be necessary for their protection that
they should be made parties, and urge a defense in a suit on
a contract which did not include them in its obligations. If
the guardian alone was sued on the note, and the minors were
not parties, they would not be bound by the judgment rendered.
If, on the contrary, the guardian had the power to bind the
property of his wards by his promise to pay, then the property
of the wards would be bound by virtue of the power he had to
make the contract; but in neither event would it be necessary
to make the minor wards parties defendant in such an action.
The suit in which the judgment was rendered was based on a
promissory note executed by the guardian. This note he was
personally bound to pay. There was, as we understand it, no
effort made to obtain a judgment binding the property of the
wards; but a judgment by default was rendered against the
guardian, his contract being unconditional. No judgment is
set out in the pleadings, and of course we have no means of as-
certaining its character. It makes no difference that the
judgment rendered designates him as the guardian of the
plaintiffs; it is, nevertheless, only a personal judgment. "A
judgment against a party, as guardian, is no more than a
judgment against him without the addition, that being only a
*descriptio personæ*." 2 Strobh. 3. Our Civil Code, § 2555,
declares, "The guardian can not . . by any contract other than
those specially allowed by law, bind his ward's property, or
create any lien thereon." In Story on Promissory Notes the
rule governing the question is laid down as follows: " And
as to trustees, guardians, executors and administrators, and
other persons acting *en autre droit* they are by our law generally
held personally liable on promissory notes, because they have
no authority to bind *ex directo* the persons for whom, or for
whose benefit, or for whose estate they act; and hence to give
any validity to a note they must be deemed personally bound
as makers." See *Lovelace* v. *Smith,* 39 *Ga.* 130. In *McFar-
lin* v. *Stinson,* 56 *Ga.* 396, this court ruled that an executor
could not bind the estate of his testator by a promissory note

executed by him and signed as executor; and in *Gaudy* v.
*Babbitt, 56 Ga.* 641, it was in terms held that this rule has not
been relaxed as to executors, administrators, or guardians; and
in *Harrison* v. *McClelland, 57 Ga.* 531, it was held that a note
signed as administrator bound the maker individually. So
that, if our reasoning be correct, the promissory note given by
Howard as guardian bound him individually; and if no power
was conferred on him by the will which created him guardian
to so bind the estate of his wards, then while the judgment ren-
dered became a lien on his property, it did not create any lien
on the property of the latter. We do not mean to say that
there are no contracts entered into by guardians which can be
enforced against the property of the wards; there may be,
but where such is the case, it is brought about generally, not
by virtue of the contract alone, but as a result of an equity in
favor of the promisee. In all such cases, however, the plead-
ings and proof must show the subsisting equity. As a matter
of law, guardians of the property of wards are trustees, whose
powers over the property of their cestui que trusts are defined
by law. Among these powers are not included the execution
of a contract binding the estate of his wards; hence, where
such a contract was sought to be enforced against him, it was
not necessary that the wards should be made parties to the suit;
and inasmuch as the judgment rendered on such contract cre-
ated no lien on the property of the wards, there can be no reason
for entertaining the petition on their part to set aside such
judgment. In this case the guardian was invested with his
power by will. It was entirely competent for the testator to
fix his powers, and it was also competent for the testator to con-
fer on the guardian the power to contract, and by his contracts
bind the estate of the wards. If this power was conferred by
the will, then the contract made by the guardian depends for its
validity on that instrument, and the effect of the judgment
rendered on such a contract is determined, not by the law regu-
lating the powers of guardians, but by the powers given him by
the will. But if we admit that in this case power was given to
him to bind the property of his wards by his contract as guard-
ian, even in that case the wards are not necessary parties in

a suit to enforce such contract, because the contract of the guardian is authorized to be made, and, when made, to bind the estate of the ward, by the terms of the will of the donor who had the power to annex such conditions.

2. The petition alleges that the guardian of the plaintiffs purchased a described tract of land for the sum of twenty-five hundred dollars; that he only paid two thousand dollars of the purchase-price, and gave his promissory note for the remaining five hundred dollars, signed by the maker as guardian. It further alleges that the guardian had sufficient property belonging to the wards to pay the entire purchase-money for the land, but that he did not do so. It alleges that the note was traded to Inman; that it was sued to judgment, and that the execution issuing on such judgment was levied on the land so purchased, which was sold under the execution and bought by Cassels, who was put in possession. It further alleges that Howard, the guardian, at the time of the purchase received a bond from Pendleton, conditioned to make title to him as guardian on payment of the balance of the purchase-money as expressed in the note. The plaintiffs allege that they have tendered to Pendleton the balance of the purchase-money as expressed, and have demanded a deed to the land and possession; and they pray that the sheriff's deed to Cassels be canceled, that Pendleton pay to Cassels the amount paid out by the latter, and that Pendleton be required to make a deed conveying the land to the plaintiffs. In other words the plaintiffs allege that it was an illegal act for their guardian to make the purchase, but that he did make it, and paid two thousand dollars of money belonging to them as part of the purchase-money. Under these circumstances they claim the benefit of the purchase, and insist that they have the right, on payment of the balance of the purchase-money, to have a title to the property and possession. Thus they seek to ratify a part of the transaction; but at the same time they repudiate that part of the contract which reserved title to the land in Pendleton, with the right in the latter to proceed against the land for the collection of the balance of the purchase-money. We think this can not be done after suit for balance of purchase-money and a sale of the land under the judgment

therein obtained. Conceding the purchase made with the funds of the wards to have been illegal, then the guardian is liable to the wards for the money so illegally used; and this is true not only of the guardian, but of all other persons who, with a knowledge of such illegal use, participated in the conversion of their money. Under well-settled principles, the wards can follow the money, so paid, into the hands of any one who received it with a knowledge of their rights and of the illegality of the transaction; but it is not consistent to ratify an illegal investment made by the guardian and repudiate a part of the contract by which the guardian undertook to pay the balance of the purchase-money before he received a title. The rule is, that the principal can not ratify a part and repudiate a part. He must adopt the whole contract or none. Civil Code, § 3021. And a ratification relates back to the act ratified. Civil Code, § 3019. See also, *Hunter* v. *Stembridge,* 17 *Ga.* 243; *Perry* v. *Mulligan,* 58 *Ga.* 479; *Barclay* v. *Hopkins,* 59 *Ga.* 566. So that if the plaintiffs claim this land, such claim must be based, either on a ratification of the action of their guardian in making the purchase, or because their money went into the purchase. If they ratify the illegal act, such ratification extends back to the contract of purchase and they must ratify the contract as an entirety. If it be contended that they are following their funds and are attempting to recover the land because their funds went into its purchase, as a resulting trust, then, under the doctrine of such trusts, they might have a right to have the land for which their money paid; but in this case the land is not alleged to be in the possession of the person who received the money belonging to them. The guardian did not acquire a title to the land, but under the contract it remained in the original vendor; and while it may be true that the wards had an equitable interest in the land to the extent of the amount of their funds which went towards its purchase, it is a question whether the equity so possessed by them attaches to the land while in the hands of a purchaser at judicial sale, by which sale title, under the terms of the contract, first passed out of the vendor. If the allegations in the petition be true, it is certain that Pendleton could not now convey title to the land. In our

opinion, the wards are not entitled to have a decree vesting in them title to the land on the simple tender to Pendleton of the balance of the purchase-money contracted to be paid by the guardian. It is too late, after a sale of the land has been made under a judgment rendered on a note given for the balance of the purchase-money under the terms of a contract, to demand of the original vendor of the land that he make a title on payment of the balance of the purchase-money originally contracted to be paid. If the wards stand on the contract made by their guardian, they must not only take that part which is favorable to them, but that other part also which made the land subject to be sold for the balance of the purchase-money.

It is a matter of regret that the record does not contain more of the facts. We can not determine to whom Pendleton conveyed the title to the land, if he ever conveyed it to any one. We do not know from this record whether when Pendleton traded the note to Inman he gave to the latter title so as to comply with the terms of the bond which he had executed to the guardian. These are pregnant questions which, in our view of the case, materially affect the rights of the plaintiffs. We only deal with the case as it is brought to our attention. The plaintiffs, under the statement of facts made in the petition, are not remediless. Certainly, if the stated facts are true, the guardian would be liable to them for the value of their property which he misapplied. Whether this liability extends to those who received it, and to the purchaser of the land, are questions to be governed by facts not shown in the record. But under any view which we take of the case the plaintiffs are not entitled, under the facts alleged in the petition, to a decree for the land; and the court committed no error in sustaining a demurrer to the petition. *Judgment affirmed. All the Justices concurring.*