TENNESSEE CHEMICAL CO. *v.* JONES, administratrix.

No. 7422.  SEPTEMBER 13, 1930.

*Hatcher & Hatcher* and *Fleming & Fleming,* for plaintiff.

*Joseph Law* and *Fullbright & Burney,* for defendant.

BECK, P. J.   Tennessee Chemical Company brought suit in Burke superior court against Mrs. J. B. Jones as administratrix de bonis non with the will annexed of J. B. Jones, alleging that J. B. Jones by his last will and testament had appointed Robert Law, Joseph Law, and C. E. Attaway as executors, and that Robert Law had later died, leaving the management of the estate to C. E. Attaway and Joseph Law.   Plaintiff sought to recover for fertilizers alleged to have been sold to C. E. Attaway as executor, for which three promissory notes had been given, said notes being signed, "Estate of J. B. Jones, by C. E. Attaway, Executor."   Plaintiff alleged that the fertilizers were furnished by it to said estate for the purpose of making crops on the farm lands belonging to the estate in the year 1921, and that the estate was liable for the fertilizers on the ground that it was a trust estate.   Plaintiff set out in its petition a copy of the will of J. B. Jones, which, omitting the formal parts, is as follows:

"Item 1.   I desire and direct that my estate shall be kept intact and undivided until my youngest son, Joe, becomes twenty-one years old.   That the funds from my life insurance shall be used in the business of my estate, as my executors in their discretion shall see fit.   I direct that my sons, Walter and Connally, shall be furnished enough money each year for their necessary clothing and educational expenses, and while at home they shall contribute pro rata to the expenses of the home.

"Item 2.   I desire and direct that my beloved wife shall have my residence at Herndon, with all its belongings, for and during the period of her natural life, after her death the proceeds after same shall be divided pro rata between my children then living.   I direct that my wife shall have seven hundred dollars per year from the revenues of my estate during her life.

"Item 3.   I nominate Robert Law, Joseph Law, and Carlton E. Attaway as executors of this my last will."

It is alleged in the petition that the testator's youngest son, Joe, did not become of age until 1926; that after the death of the testator, and prior to 1921, Robert Law, one of the executors, died, leav-

ing C. E. Attaway and Joseph Law executors in charge of the estate, and the active management, "especially of the farming operations, was carried on by said C. E. Attaway, who for a number of years, including the year 1921, made the usual contracts and purchases of supplies for carrying on the farming operations under the terms of said will, with the knowledge and approval of said Joseph Law, his coexecutor. In arranging for the crops to be raised on the farms belonging to said estate for the year 1921, said executors purchased from plaintiff company and used on the crops for that year certain fertilizers. The contract of purchase of fertilizer was evidenced by three notes, all dated May 2, 1921, each for $537.50, due respectively Oct. 1, Oct. 15, and Nov. 1, 1921." A copy of one of the notes is attached, it being alleged that the notes were identical except as to dates of payment. It is further alleged that the fertilizer was furnished for the use of said estate "under circumstances in which a court of equity would render said estate liable for the payment thereof."

To this petition the defendant demurred. The court sustained the demurrer and dismissed the case.

One attack on the petition as a whole is that the facts alleged fail to show that the trust estate is liable for the fertilizer alleged to have been furnished to it. No trust estate in express terms is created by the will of J. B. Jones; but conceding that the estate which the executor took under the terms of the will is in the nature of a trust estate—and as such we shall refer to it,—that estate could not be made liable upon the notes the collection of which it is sought to enforce. No authority is expressly given to the executors named, either as executors or trustees, to conduct any business for the estate. If it be insisted that the provision in the first item of the will, that "the funds from my life insurance shall be used in the business of my estate, as my executors in their discretion shall see fit," is broad enough to allow the executors to carry on the business of farming, the power expressly conferred by that item is that the executors may use the funds from the testator's life insurance, and no authority is conferred upon them to make contracts binding the trust estate generally or to give notes binding the estate, even though the notes were given for the purchase of fertilizers to be used in the business of carrying on a farm. We have a statute which imposes control upon executors, administrators, guard-

ians, and trustees as to the indebtedness which they are permitted to make; and only when authority is given executors by the will which they are to administer, or trustees by the instrument creating a trust, are they authorized to depart from the restrictions of the statute. In *Howard* v. *Cassels,* 105 *Ga.* 412, 416 (31 S. E. 562, 70 Am. St. R. 44), it was said: "As a matter of law, guardians of the property of wards are trustees, whose powers over the property of their cestuis que trusts are defined by law. Among these are not included the execution of a contract binding the estate of his ward." In *McFarlin* v. *Stinson,* 56 *Ga.* 396, it was ruled that an executor could not bind the estate of his testator by a promissory note executed by him and signed as executor. In *Gaudy* v. *Babbitt,* 56 *Ga.* 641, it was said that this rule has not been relaxed as to executors, administrators, or guardians. And these rulings were applied in the case of *Burke* v. *Mackenzie,* 124 *Ga.* 248 (52 S. E. 653), where it was said: "The general rule is that trustees are not authorized to create any lien upon the trust estate, except such as is authorized by law. . . It is therefore incumbent upon one seeking to charge the ward's property by a contract of the guardian to show that the claim set up by him is one which the law specially authorized the guardian to contract and bind the ward's property therefor." In *Fidelity & Deposit Co.* v. *Rich,* 122 *Ga.* 506 (50 S. E. 338), it was held: "A guardian is not permitted by law to bind the estate of his ward by a contract for the purchase of goods on credit, even though the goods be for the use of the ward and properly classed as necessaries." See also *First National Bank of Waynesboro* v. *Mead,* 145 *Ga.* 608 (89 S. E. 681), where it was said: "There is no law authorizing the guardian to contract, under the facts alleged in the petition, for the purchase upon credit of the fertilizers represented by the account sued upon."

If the will in this case had authorized the executors to carry on a farming business generally, the case would stand upon a different footing. Here there is no authority given expressly to carry on a farming business. But say that on account of the character of the trust estate the testator must have had in mind a farming business, he did not authorize the executors generally to bind his estate by contracts to purchase fertilizers necessary to carry on that business; he went to the extent merely of authorizing them to use his insurance money in carrying on his business. We think that in

view of what is said above the court properly sustained the general demurrer to the petition.

And upon another ground the court should have sustained the demurrer to the petition. There were two executors. This note sued upon was executed by only one of them. C. E. Attaway, and the other executor, Joseph Law, did not join in making the contract. The statute expressly says, where two or more executors are named in a will, "if more than one qualifies, each is authorized to discharge the usual functions of an executor, but all must·join in executing special trusts, or in making contracts binding upon the estate, or in paying out funds belonging to the estate." Civil Code, § 3893. While it is alleged in the petition that "the active management, especially of the farming operations, was carried on by C. E. Attaway, who for a number of years, including the year 1921, made the usual contracts and purchases of supplies for carrying on the farming operations under the terms of said will, with the knowledge and approval of said Joseph Law, his coexecutor," it is not alleged that the coexecutor expressly consented to the making of this note and authorized its execution; and, as we have noticed above, he did not sign it. And so we are of the opinion that even if, under all the facts that might be shown in reference to the business of the testator, the estate might be liable for fertilizers furnished to carry on the farming business, where they were purchased for use on the farm and were actually so used, and both executors had consented and joined in making the purchase, nevertheless those who furnished the fertilizers could not recover upon a note given by one of the executors alone.

*Judgment affirmed. All the Justices concur.*