## LAMAR, executor, *v.* LAMAR, executor, *et al.*

1. It is not the privilege of a party to an action to except to the judgment therein rendered, unless he is, either as an individual or in a representative capacity, aggrieved thereby; and no one is, in a legal sense, aggrieved by a judgment which does not prejudicially affect his rights of property or pecuniary interests, or those of others for whom he is, relatively to the suit in which that judgment is rendered, the duly constituted representative.

2. An executor has an undoubted right to except to a decree whereby he is deprived of commissions to which he is legally entitled; but where all the persons interested in bringing about a proper distribution of the assets of an estate are before the court, either in person or through representatives other than the executor himself, he is under no duty, and therefore it is not his privilege, to bring under review the correctness of the decree entered, in so far as it affects the interests of other parties to the litigation who are satisfied with the result thereof.

3. When an executor is authorized and directed by his testator to continue in operation, for a given period after the death of the latter, a mercantile enterprise established by him, the executor has no statutory right to "commissions" on the gross receipts realized or the necessary disbursements made by him while conducting the business; but for his services in carrying it on during the stipulated period and making settlement with creditors for debts contracted by him in due course of trade, the only claim he can, under the laws of this State, enforce against the estate is one for reasonable compensation, to be fixed by the court.

(a) The consent decree relied on by the plaintiff in error in the present case conferred upon him no right to charge commissions on any of the sums of money which either constructively or actually passed through his hands in the management of the business enterprise entrusted to the care of himself and his coexecutor.

(b) Nor was the effect of that decree to change the statutory rule touching the allowance of commissions to administrators and executors, under which he was "entitled to no commissions on debts, legacies, or distributive shares paid to himself."

(c) Indeed, no reason appears why the judgment excepted to should, at his instance, be set aside, either because he was deprived of commissions to which

he was legally entitled, or on the ground that he will not be amply protected if he administers the estate in accordance with the directions given him by the court below.

·Argued May 4, — Decided October 2, 1903.

Petition for direction.    Before Judge Felton.    Bibb superior court.    May 8, 1902.

*Steed & Ryals*, for plaintiff in error.

*Hardeman, Davis, Turner & Jones, Dessau, Harris & Harris, Hall & Wimberly, Bacon, Miller & Brunson,* and *W. B. Birch,*. contra.

FISH, P. J.    This case is a branch of the litigation with which this court dealt at its March term, 1899, the same having been inaugurated by Henry J. Lamar and Walter D. Lamar, as the executors named in the will of their deceased father, Henry J. Lamar, Sr., with a view to invoking the direction of the court as to certain matters connected with the administration of their testator's estate.    After passing upon the issues then presented for our determination, we affirmed the judgment of the trial court, with direction as to what further action should be taken in disposing of the case.    See *Lamar* v. *McLaren*, 107 *Ga*. 591.    Subsequently Walter D. Lamar, in his representative capacity, filed an ancillary petition in which he recited the fact that the case was still pending in that court, and in which he alleged that he and his coexecutor were unable to agree as to what steps should be taken in attempting to carry out the provisions of the fifth item of the will, which was in the following language: " I desire and direct that my drug business, known as H. J. Lamar & Sons drug-store, Lamar & Cheatham drug-store, and the Vineville drug-store, be, by my executors hereinafter named, continued in operation for and during the term of five years after my death, and the profits arising therefrom annually divided amongst my legatees entitled thereto, in the proportion as each legatee may have an interest in such business respectively."    It was further stated in this petition that the drug business was being conducted by the executors; that certain profits had been realized therefrom, and that some of the legatees interested in these profits were demanding that the same be distributed in accordance with the provisions of the above-mentioned item of the will.    The construction which petitioner, Walter D. Lamar, as executor, placed upon the language used by the testator

in this connection and in other portions of his will was also made known to the court, and a plan was suggested whereby, in the opinion of the petitioner, the wishes of the testator could be carried into effect. Petitioner prayed that his coexecutor be required to join with him in distributing the profits of the business in accordance with this plan ; or, if the court should determine that this method of distribution was not in conformity with the terms of the will, that a decree be passed giving direction as to the manner in which such profits should be distributed amongst such of the legatees as were entitled thereto. All parties concerned were given notice of the filing of this petition, and Henry J. Lamar, as executor and also in his capacity as trustee of some of the legatees, resisted the effort of his coexecutor to bring about the proposed distribution of profits, insisting that to do so at that time would greatly injure the business and defeat the real intent and purpose of the testator. His honor of the trial bench evidently took this view of the matter ; for, after hearing from all parties at interest as to the duty devolving on the executors to carry into effect the provisions of the above-quoted item of the will, he declined to at that time order a distribution of the profits.

The executors continued to conduct the drug business until the expiration of the period fixed by the testator. The business was then sold for the sum of $175,000, the purchasers assuming the payment of all outstanding accounts and other liabilities. Shortly thereafter, in February, 1902, Walter D. Lamar, as executor, renewed his effort to secure a decree from the court providing for a distribution of the profits of the drug business in accordance with the fifth item of the will. In the petition filed by him for this purpose he stated that he and his coexecutor were still unable to agree as to their duty in the premises, and that there was also a difference of opinion between them as to the amount of commissions they were authorized to charge against the estate for conducting the drug business, bringing about a sale thereof, etc. Service was perfected upon all the parties interested in the distribution of the fund arising from this sale ; and it being made to appear to the judge that some of the trustees named in the will had personal interests which were antagonistic to those of certain minor children whom they represented, he appointed a guardian ad litem for such children. Answers were filed by this guardian ad litem,

and by all of the adult parties concerned. In that of Henry J. Lamar, in his representative capacity as executor, he resisted the effort of his coexecutor to bring about the proposed distribution of profits, on the ground, among others, that the prior action of the court in regard to this matter rendered it one which was res adjudicata, and that the fund arising from the sale of the drug business should be regarded as forming a part of the corpus of the estate and distributed accordingly. He also set up a claim for commissions on all sums received and expended in conducting that business during the period of five years it was kept in operation, alleged that the aggregate amount of the debts assumed by the purchasers of it was about $80,000, and prayed that commissions be allowed him upon this sum in addition to that which they paid in cash and by their promissory notes, amounting to $175,000. By agreement of the parties, his honor heard the case without the intervention of a jury. On May 8, 1902, he rendered a decree, whereby he gave direction to the executors as to the manner in which they were to distribute the fund in controversy, and fixed the amount of the commissions to be charged by them. All of the parties litigant save Henry J. Lamar seem to have been satisfied with the outcome of the case. At any rate, none of them save him excepted to the decree, and he did so only in his capacity as an executor. On the call of the case in this court, counsel for two of the defendants in error suggested, by way of a motion to dismiss the writ of error, that he had no interest to be subserved by bringing the case here for review, and accordingly had no right to sue out a bill of exceptions. This suggestion was both timely and important. Indeed, it presents the controlling question upon which we are called on to pass.

1. It has, we believe, ever been the law, both in this State and in other jurisdictions, that a party not aggrieved by the judgment of a trial court is without legal right to except thereto, since he has of it no just cause of complaint. See *Townsend* v. *Davis*, 1 *Ga.* 495; *O'Halloran* v. *O'Halloran*, 49 *Ga.* 301; *Brown* v. *Atlanta*, 66 *Ga.* 76; *Braswell* v. *Equitable Mortgage Co.*, 110 *Ga.* 30; *Collier* v. *Hyatt*, Id. 317; *Orr* v. *Webb*, 112 *Ga.* 810, and cases cited; 2 Tidd's Prac. *1135; 3 Bac. Abr. 330; 2 Enc. Pl. & Pr. 160, 161, 167. "In legal acceptation, a party is aggrieved by a judgment or decree when it operates on his rights of prop-

erty, or bears directly upon his interest."    2 Cyc. 633, and cita-
tions.   As was pertinently remarked by Chief Justice Jackson in
*Brown's* case, supra:   " When a plaintiff in error brings a case·
here, he must show error which has hurt him.    This court is not
an expounder of theoretical law, but it administers practical law,
and corrects only such errors as have practically wronged the com--
plaining party."    It appears from the record in the present case
that Henry J. Lamar had an interest in the outcome of the litiga-
tion, (1) as a legatee under the will ; (2) as trustee for a number
of beneficiaries therein designated ; and (3) as one of the executors
of the estate.    In his individual capacity as a legatee he can not,
for at least two reasons, be heard to complain of the decree ren-
dered by the court below, because he did not, in that capacity, file
any answer to the ancillary petition interposed by his coexecutor,
nor except to the decree.    In his representative character as trus-
tee he can assert no rights under the present writ of error ; first,
because he did not, as such trustee, resist the effort made to com-
pel a distribution of the fund in controversy, or offer any objection
to the proposed method of distribution ; and, secondly, because he
did not, in that capacity, sue out the bill of exceptions. So, while
he is before us in the attitude of a plaintiff in error, we must re-
gard him as having no interest in setting aside the judgment of
the trial court, save as one of the executors of the Lamar estate ;
for as such, and in that representative capacity alone, he has
deemed it proper and expedient to voice his complaint.

In construing pleadings, they should, of course, be given a rea-
sonable intendment.    Where, therefore, one brings an equitable
petition, reciting therein the fact that his interest in an estate is
that both of an executor and of a legatee, alleging the pendency
of a proceeding at law instituted by some of his individual credit-
ors with a view to subjecting to the satisfaction of their demands
against him such interest in the estate as he has as a legatee, to
which proceeding other creditors of his and of the estate are par-
ties defendant, and praying for a decree directing him how, in view
of the conflicting claims of these creditors, to administer the estate
of his testator, etc., he is to be deemed " a party complainant, not
only as executor, but likewise as legatee and debtor," since his
evident purpose is to obtain a decree settling the whole contro-
versy, binding upon him both in his representative and in his indi-

vidual capacity, as well as upon all others concerned. *Fouché* v. *Harison*, 78 *Ga*. 360, cited approvingly and followed in *Jenkins* v. *Nolan*, 79 *Ga*. 300. So also, where, "in defense to an action brought against one as an individual, he files an answer which practically, though not in express terms, makes him in his character as administrator of a deceased person a defendant to the action," and he actually defends the same "in the right of his intestate's estate, the estate is concluded by the judgment rendered in that action." *Braswell* v. *Hicks*, 106 *Ga*. 791. But, as was distinctly recognized in the case last cited, "it is a well-established rule of law that a judgment rendered against one sued as an individual is not conclusive of any right he may have in a representative capacity, such as executor, administrator, or guardian;" and it necessarily follows that where the pleadings in a case clearly show that one of the parties thereto either prosecutes or defends it in one capacity, and in one capacity only, he can not properly be regarded as having brought or defended the suit in any other capacity than that indicated by his pleadings.

In the case now before us, Henry J. Lamar was called upon to defend. He did so in but one capacity, explicitly stating in his answer that he filed it "as one of the executors of H. J. Lamar, deceased." It was signed by his counsel as "Attys. for H. J. Lamar, Extr." In it he urged objections to the proposed distribution of profits, but set up no individual rights which he claimed as a legatee; so it is manifest that he did not intend by this answer to defend the action in that capacity. It is equally clear that he did not thereby undertake to defend the action in his representative capacity as trustee, for in this very answer he sought to hold the estate liable for large commissions alleged to be due him as executor, a claim adverse to the interests of the beneficiaries he represented as trustee, as well as to those of other parties to the litigation. Doubtless he concluded it was unnecessary to file a separate answer as such trustee, for the reason that, if the defense he interposed as executor were sustained, none of his cestuis que trust would be prejudiced by his failure to do so. Certain it is that Henry J. Lamar did not, either as a legatee or as a trustee, except to the decree rendered, as the bill of exceptions brought to this court recites that it was presented, within the time prescribed by law, by "said defendant H. J. Lamar, as Extr. of the.

will of H. J. Lamar, deceased," who, in that capacity, was "one of
said defendants in said case," and who excepts to the decree of the
court below on various grounds, one of them being that he was
not awarded the commissions to which he was, as such executor,
entitled.    Furthermore, the bill of exceptions was signed by his
counsel as "Attys. at Law for H. J. Lamar, Executor of H. J.
Lamar, dec'd," and the record fails to disclose that they represented
him, or had any authority to represent him, in either his capacity
as a trustee or as a legatee.    Accordingly, our inquiry should be
whether or not it was essential to the protection or promotion of
any interest he had as executor that he should, as he did, in his
representative character as such, except to the decree the correct-
ness of which he seeks to bring under review.

2.    We need not cite authority for the proposition that it is the
undoubted right of an executor to except to a judgment or decree
fixing the amount of compensation he is entitled to receive for his
services in administering the estate he represents, if he is thereby
deprived of commissions the allowance of which he has a legal
right to demand.    It is, or should be, an equally well-recognized
truism that when an executor is a party to a case instituted with
a view to invoking the direction of a court of competent jurisdic-
tion as to the manner in which his testator's estate should be ad-
ministered, and the court, having all persons concerned before it,
renders a decree which definitely fixes the respective rights of all
of them and orders the executor to administer the estate in accord-
ance with such decree, it is neither his duty nor his privilege to
bring into question any ruling or decision of the court which only
affects the interests of other parties to the case.    This is so for the
all-sufficient reason that if one or more of them be prejudiced by
the decree, it is right of such of them as are aggrieved to prosecute
a writ of error independently of his sanction or co-operation; and
if all of them be satisfied with the decree, or if for any reason those
dissatisfied therewith fail to except thereto in their own right and
in their own behalf, he will be fully protected in carrying into ef-
fect the directions given him by the court.    See, in this connec-
tion, Bates v. Ryberg, 40 Cal. 463; Estate of Wright, 49 Id. 550;
Roach v. Coffee, 73 Id. 282; Estate of Williams, 122 Id. 76;
Green v. Blackwell, 32 N. J. Eq. 768; Chew's Appeal, 3 Grant
(Pa.), 308; Singmaster's Appeal, 86 Pa. St. 169; Zumwalt v.

Zumwalt, 3 Mo. 269; Edmund's Adm'r *v.* Scott, 78 Va. 720, 730. We understand counsel for the plaintiff in error to contend that, even if the law be as just stated, their client, as one of the executors of the Lamar estate, had a right to object to the method of distribution adopted by the court below, and to except to its decree as to the manner in which the estate should be administered, (1) because he, in his capacity as executor, represented all unborn children who might take as contingent remaindermen under the will, and (2) because he and his coexecutor were charged with the duty of making a proper distribution of all property which might, under the terms of the will, revert to the estate in the event certain beneficiaries died without issue; and therefore, as one of the executors, he necessarily represented all persons who might in the future become entitled to share in the proceeds of such property. The facts disclosed by the record before us furnish a very satisfactory reply to this contention.

The moving executor, Walter D. Lamar, wished to invoke the advice, direction, and protection of the court. To this end, it was necessary that he should bring before the court, in person or through a proper representative, all parties who had, or might have, an interest in the due administration of the estate, including the obstructing executor, Henry J. Lamar. All adult beneficiaries under the will were cited to appear and defend, and there can be no question that all of them became effectually bound by the decree rendered. The will provided that the portions of the estate intended for all other beneficiaries, born or to be born, should go to certain named trustees. One of these was Walter D. Lamar. It would not be seemly, nor permissible, for him as trustee to undertake to defend an action which he had brought in his representative character as executor. He did not, in point of fact, attempt to do so, but in his petition prayed that the court appoint a guardian ad litem who should, so far as this litigation was concerned, stand in his stead as such trustee and protect the interests of the minor beneficiaries which he otherwise would be under a duty to represent. He further prayed that a guardian ad litem be appointed to represent certain other minor beneficiaries whose trustee, Mrs. Fannie Rankin, had an interest in the subject-matter of the litigation which was antagonistic to their own, and therefore calculated to render her an unfit representative for them. The

court did appoint a guardian ad litem to take the place and assume the responsibilities of these two embarrassed trustees. That he, in accepting this appointment and undertaking to discharge the duties it imposed upon him, represented as a class all the children, born or to be born, for whom Walter D. Lamar and Mrs. Rankin had been nominated trustees, is not open to serious question. All of these beneficiaries were, by representation, before the court at the time the appointment of the guardian ad litem was made, for the two trustees just named undoubtedly represented both the ascertained and contingent remaindermen in whose behalf they were, under the will, authorized to act. *Schley* v. *Brown,* 70 *Ga.* 64 (4). The court, having acquired jurisdiction over these beneficiaries through their duly constituted trustees, had the inherent power to appoint a guardian ad litem for such of them as were in life, and to impose upon him the duty of protecting the interests of the class to which they belonged. 10 Enc. Pl. & Pr. 635–6, 643. He was, under the order of the court, also directed to look after the interests of a different class of children for whom and for whose mother another trustee, Eli S. Shorter, had been nominated by the testator. This was, it seems, however, an unnecessary precaution; for while the interests of these children and their mother were not identical, their trustee was not embarrassed by this fact, because the mother was sui juris and therefore capable of defending the action in person, leaving him free to give his undivided attention to the protection of the interests of her children, in life or not in esse. All other remaindermen, known or contingent, who had any concern in the subject-matter of the litigation, were before the court in the person of Henry J. Lamar, their trustee. His interests were not antagonistic to theirs; Mrs. Harris (formerly Valeria McLaren), a tenant for life, of whom he was also the trustee, appeared and made her defense through special counsel, who filed in her behalf an independent answer; and therefore he was in a position to represent both known and unascertained remaindermen who belonged to the class of children for whom he was trustee. As has already been remarked, he did not, in that capacity, file an answer; but suffered them, without protest, to become bound by the decree. Bound thereby they certainly are. Indeed his omission to enter a defense in their behalf is a purely personal matter with which he and they alone are concerned, and respecting which he

may hereafter, if ever called upon by them to do so, offer as satisfactory an explanation as he can.

From the foregoing recital of facts it will readily be perceived that Henry J. Lamar was not, in his capacity as executor, either under the terms of the will or by virtue of any order of court, the legally constituted representative of any children, born or unborn, having an interest in the result of the case; and clearly it was not his privilege, as a mere volunteer, to assume to represent the contingent remaindermen in the trial court or in this. His only concern was to see, for his own personal protection, that all contingent remaindermen and others having a beneficial interest in the estate were properly before the court below, in person or by a fit representative, to the end that all might become bound by the decree rendered, whatever it might be. It was his right to insist that the court should not attempt to render a final decree until it acquired jurisdiction over all necessary parties to the case; but, as one of the executors of the estate, he no more represented, for the purposes of this suit, contingent remaindermen not in esse than he did all minor beneficiaries, their trustees, life tenants who were sui juris, or the court itself. Unquestionably it is true, as contended by counsel for the plaintiff in error, that under the will it is the duty of the executors to receive and make a proper distribution of all property devised or bequeathed which may at any time in the future revert to the estate. It may also be conceded that it was not necessary that all persons entitled to share in the proceeds of property which may hereafter revert to the estate should be made parties to the present litigation over the fund in controversy, for the reason that they could claim no immediate interest therein, and the executors were bound to represent them to the extent of insisting that they, as executors, should not be prejudiced by an improper distribution of that fund, whereby they would be unable to respond to the demands of these persons having a reversionary interest therein, if it should ever in whole or in part eventually revert to the estate. It is, however, to be noted that in the sixth item of the will the testator directed that such property as might revert to his estate should be "divided equally amongst [his] surviving children, to be held to such uses and trusts" as attached to the legacies "bequeathed to such children;" so all persons who might subsequently to the decree rendered become entitled to

claim a benefit under this item were, in point of fact, actually before the court, either in person or by representation.    This being true, none of them will hereafter be at liberty to assert that an improper distribution of the fund was made, and upon this ground hold the executors accountable for a greater proportion thereof than may actually in the future revert to the estate upon the death of any one or more of the legatees without issue.    It follows, of course, that Henry J. Lamar really has no cause to apprehend that, in the capacity in which he appears before this court as a plaintiff in error, the decree of which he complains will not afford him ample protection, in the event he complies with the directions thereby given him and his coexecutor.    We shall accordingly undertake to pass upon the merits of such only of the assignments of error in the bill of exceptions as relate to the allowance of compensation to the executors for their services in managing and administering the estate of their testator.

3.    One of these assignments of error is, that the court below erroneously held that the plaintiff in error and his coexecutor were "not entitled to commissions upon the sums of money received and paid out in the course of conducting the drug business during the period of 5 yrs., as directed by the will." The evidence showed that they did exercise a general supervision over this business during that period, though the business was actually conducted by managers whom the testator had, prior to his death, selected to look after the same, under an arrangement whereby they shared in the profits, and who continued after his death to do so in accordance with this understanding.    Even had the executors in person conducted the business, they would not have been entitled to charge commissions on the actual receipt and disbursement of moneys incident to carrying on the enterprise of buying and selling drugs, etc., the handling of money in this manner not coming within the terms of a statute which provides for the allowance of commissions in winding up the estate of a decedent in the usual and ordinary way.    11 Am. & Eng. Enc. L. (2d ed.) 1294–5, and notes; Jones *v.* Jones, 39 S. C. 247 ; Dwyer *v.* Kalteyer, 68 Tex. 554; Beard *v.* Beard, 140 N. Y. 260.    In this State, executors and administrators stand upon the same footing as to the right to charge commissions.    Civil Code, § 3316.    And our statute provides that an administrator is entitled to a commission only " on all sums of

money received by him on account of the estate (except money loaned by him and repaid to him), and a like commission on all sums paid out by him, either to debts, legacies, or distributees" (Id. § 3484), as well as a commission on interest arising on money loaned by his intestate or himself (Id. §3485); and further in express terms declares that he "is entitled to no commissions on debts, legacies, or distributive shares paid to himself." Civil Code, § 3486. He has a right to be reimbursed for traveling expenses incurred by him when the affairs of the estate necessitate that he should "travel out of his county;" and he may be allowed "reasonable compensation for the time devoted to this service." Id. § 3488. "In other cases of extraordinary services, extra compensation may be allowed" him, also. Id. § 3489. But it is clear that our lawmakers never contemplated that either an administrator or an executor should have a right to charge "commissions" on all gross receipts and disbursements of a business venture, conducted with a view to making profits which should swell the corpus of the estate. In the present case, the court allowed the executors commissions on all profits realized by them in conducting the drug business during the period fixed by the testator, and clearly these commissions were all they were entitled to receive, in addition to such as were allowed them on other funds derived from the sale of that business. Under the provisions of the section of the code last cited, the executors might, perhaps, have set up a claim for "extra compensation" because of "extraordinary services" performed by them in superintending the operation of the drug business of their testator after his death. But they did not, as matter of fact, do so. The reason they did not is disclosed by the record before us; for it appears that they were effectually bound by a decree rendered by the court below on November 27th, 1899, to the rendition of which they expressly consented in writing, which provided that "No extra compensation shall be allowed said executors under section 3489 of the Code of Georgia."

This decree further provided, that, in addition to "the commissions already charged by them for administering said estate, and as further compensation for their services," the executors should "have and receive an aggregate commission of 5%, and no more in any event, on all of said estate [thereafter] administered by them, to wit, 5% on all moneys received and paid out, and 5% on

all the appraised value of all property delivered over in kind by them, except on the corpus of the specific legacies " (for the delivery of which they were to receive not exceeding one per cent. on the appraised value thereof), as well as " 5% commissions on all profits and dividends arising from specific legacies and distributed by them under the terms of said will." It was insisted by counsel for the plaintiff in error that under the terms of this decree, if not under the general law governing the allowance of commissions, he was entitled to a commission on the gross receipts and disbursements of the drug business after the date on which this decree was rendered.    Counsel further contended, in effect, that the decree changed the statutory rule as to the right of an executor to charge commissions " on debts, legacies, or distributive shares paid to himself," and therefore gave their client a right to receive commissions on the sums and legacies to which he and his coexecutor were entitled as legatees.    We can not give to this decree any such unreasonable and strained construction.    The court and the parties who gave their consent thereto can not have intended that commissions should be allowed on receipts and disbursements as to which, under the laws of this State, the executors could assert no right to receive commissions.    The evident purpose of this decree was simply to fix the per cent., or rate, of the commissions to be allowed for future services in administering the estate in the usual and ordinary way.    Two and one half per cent. is the rate which our statute authorizes an administrator or executor to charge as a commission " on all sums of money received by him on account of the estate [and] on all sums paid out by him, either to debts, legacies, or distributees," save to himself.    Civil Code, § 3484.    The decree simply doubled this rate by providing that a commission of five per cent. might be charged.    This was done doubtless with a view to compensating the executors for all extra services performed by them, the decree expressly stipulating that they should not be allowed any " extra compensation " under the provisions of section 3489 of the Civil Code, but should be entitled to twice the amount of " commissions " they otherwise would have a legal right to demand.

Another assignment of error presents the complaint that the court below erred in holding that the executors were " not entitled to commissions on the $80,000.00 of debts assumed by the pur-

chaser of the drug business." The argument upon which this complaint is predicated is that "these debts were assumed by the purchaser as a part of the consideration of the purchase, and that instead of paying the executors $255,000.00 for the business, and the executors to pay the debts, the purchaser paid $175,000.00 and assumed the debts, and that this is in law a payment by the executors, though the actual cash may not have passed through their hands to said creditors."' In other words, the doctrine of constructive delivery is invoked — delivery of a promise to pay debts (to be regarded as the legal equivalent of money, whether complied with or not) from the purchaser to the executors, and a delivery by them to their creditors of such fruits (also to be regarded as the equivalent of actual cash to the amount of $80,000) as may flow to them by reason of that promise. The argument apparently assumes, as a premise not to be questioned, that this $80,000 indebtedness was one as to which the executors would be entitled to commissions had they discharged it in full by actual payment in money to the creditors themselves. The indebtedness was contracted in conducting the drug business in accordance with the directions given by the testator in his will. In keeping it a going concern, not only was it necessary and proper to buy goods, but it was likewise necessary and proper to pay for them. Had all debts incurred in the course of carrying on the business been in fact paid before it was sold, the executors would not, as has been seen, be entitled to exact "commissions" on the disbursement of moneys made in discharging such debts. It will not, perhaps, do to say that the executors were guilty of any neglect of duty in not paying all outstanding debts; for the evidence does not disclose that the business was managed in a way other than that in which it should have been conducted. Rather be it said that the duty of discharging this large indebtedness was postponed to, or that the duty was one the time for the fulfillment of which did not arrive until, a date subsequent to that on which the sale of the business took place. But be this as it may, the duty was one which had to be sooner or later performed as a service directly connected with the management of that business after the death of the testator, and a service for the performance of which the executors (if entitled to any reward at all) could only set up a claim for "extra compensation" under the section of the code above cited,

relating to "extraordinary" services required of administrators or executors. This being so, even had the purchaser of the drug business paid in cash to the plaintiff in error and his coexecutor $255,000 as the purchase-price thereof, leaving them to settle with creditors, the executors would not have had, either under the statute or under the consent decree above mentioned, any right to demand the allowance of "commissions" on the $80,000 of that sum required to pay off the indebtedness contracted by them. On the contrary, the remaining $175,000 of the purchase-price would represent the true result which their management of the business had produced, taking into consideration the working capital entrusted to their care and the profits realized thereon. It is to be noted that there is no pretence that the testator had, prior to his death, placed on the drug business this grave burden of indebtedness, and therefore it was necessary that his executors should, in winding up his estate in the usual and ordinary way, realize from the assets coming into their hands a sufficient amount to discharge this indebtedness and actually get rid of it by way of payment. So far as appears, it was one which the executors themselves contracted after they assumed charge of the business. They never in point of fact paid it, but, under the terms of the contract which they made with the purchaser of the business, were relieved of the labor and responsibility of settling with their creditors. How, then, could they be allowed to set up any fiction of law to the contrary and base thereon even a claim for "extra compensation" on the ground of "extraordinary services" — extraordinary only in that they were never performed ? We do not know, nor is it necessary that we should say more than that the plaintiff in error was certainly not entitled to any "commissions" on this eighty-thousand-dollar indebtedness. That the court below viewed the matter in the same light did not give to him any just cause of complaint; nor does it appear that for any other reason the decree excepted to should, at his instance, be set aside.

*Judgment affirmed. All the Justices concur, except Turner, J., who did not preside.*

# CASES

### DECIDED IN THE

# SUPREME COURT OF GEORGIA

#### AT THE

## OCTOBER TERM, 1903.