CARTER, trustee, *et al. v.* DAVIS, superintendent of banks, *et al.,* et vice versa (three cases).

Nos. 8728, 8729, 8732. May 13, 1932.

*Wheeler & Kenyon* and *Marion Smith,* for Carter, trustee.
*Hammond Johnson,* for Sanders, administrator.
*C. N. Davie, J. F. Kemp, J. G. Collins,* and *Lawrence S. Camp,* for Davis, superintendent.

GILBERT, J. These three bills of exceptions assign error on the several portions of the decree rendered, and all grow out of the equitable proceeding filed by the superintendent of banks against "O. A. Carter as trustee succeeding the late T. E. Atkins under the terms and provisions of the last will and testament of Fannie A. Sanders," and Maynard R. Sanders as administrator cum testamento annexo de bonis non of the estate of Mrs. Fannie A. Sanders. They will all be considered together.

By her will, item 3, Mrs. Fannie A. Sanders left to her daughter, Mrs. Montine Sanders Hinton, 184 shares of stock in the State Banking Company of Gainesville, "to be held in trust . . for and during her natural life, and at her death to be divided equally between the surviving children of the said Montine Sanders Hinton, share and share alike." To each of three grandchildren, Maynard R., Helen J., and Marie Armontine Sanders (children of her deceased son R. J. Sanders), she left 61 shares of stock in the same institution. The will, item 8, also provided that a parcel of real estate described as "the State Bank Building, located on the public square of Gainesville, Hall County, Georgia," should be "held in trust by my executor . . until the death of my daughter, Montine Sanders Hinton, and at her death to be sold at public or private sale, and to be divided equally, share and share alike," between the "living children" of R. J. Sanders and Montine Sanders Hinton. The executor named in the will, and

826

who it was provided should hold in trust the property mentioned, was T. E. Atkins. Mrs. Sanders died on September 1, 1924. Atkins immediately took possession of the 184 shares left by the will to Mrs. Hinton and her children, and in 1925 they were transferred on the books of the bank to him as "such trustee." Mrs. Hinton died on February 7, 1930. Atkins died on May 1, 1930. On petition to the superior court of Hall County, Oliver Carter, on July 5, 1930, was "designated as new trustee to hold the property described [the parcel of real estate], . . and to execute the trust designated by the said 8th item." Maynard R. Sanders became administrator with the will annexed of the estate of Mrs. Fannie Sanders.

On May 5, 1930, the affairs of State Banking Company were surrendered to the superintendent of banks for liquidation. During the incumbency of Atkins as executor, the petition alleges, the estate of Mrs. Sanders became indebted to the bank, for money advanced for the benefit of the estate, on two promissory notes, one for $1666.66, the other for $653.03. The superintendent of banks made an assessment of 100 per cent. against the stock bequeathed to Mrs. Hinton and held by Carter as successor trustee, and also the stock held by Maynard R., Helen, and Armontine Sanders. Executions were levied on the real estate above referred to. The superintendent of banks filed a petition which, in addition to what is set out above, alleged that property belonging to the estate of Mrs. Sanders was, after the payment of debts of the estate, subject to the payment of the liability fixed by law for the stock in the State Banking Company bequeathed to the daughter and grandchildren of Mrs. Sanders; that Carter, as trustee for the children of Mrs. Montine Sanders Hinton, was in possession of the real estate; that he represented only such children, was interested only in their behalf and not in behalf of the creditors and others similarly situated, and refused to pay the assessment; that M. R. Sanders, administrator, refused to take any steps to recover possession of said property for the purpose of paying the debts due by said estate; that petitioner was entitled to have said property administered for the purpose of paying the debts of said estate; that the estate was without funds other than said building with which to satisfy said obligations; that the only asset in the possession of Carter, trustee, was the

bank building; that said building was not worth the amount of assessments upon the stock; that it was necessary for a court of equity to intervene in order to protect the interests of petitioner and the depositors represented by him; and that he was without adequate remedy at law. He prayed for decree determining the liability of the estate, and/or the trust created by the will in the real estate mentioned, to the stock assessments; that the real estate be sold and the proceeds applied first to the payment of debts due by the estate of Mrs. Sanders on the notes, and then to the payment of the stock liability referred to; that a receiver be appointed to take charge of and sell the real estate; and for general relief.

In his answer Carter, as trustee, contended that the execution issued against him was wholly illegal, and that it could not be lawfully levied upon the real estate held by him as trustee; that, promptly after the will of Mrs. Sanders was probated, Atkins as executor took charge of the estate and consented to the vesting of the legacy concerning the real estate; that he at once commenced paying the income from the real estate to Mrs. Hinton and continued to do so until her death; that upon consenting to the vesting of the legacy Atkins ceased to hold the property as executor and held it as trustee under the will; that Carter then held the property as successor trustee by appointment of the court; and that he was "informed and believes that the said notes do not represent legal or valid debts of the estate of Mrs. Fannie A. Sanders." Sanders, administrator, admitted that the notes mentioned "represented advances of money made to said estate and for its benefit.". He set up that the will did not authorize the executor to execute the notes, but admitted that the estate was indebted to the banking company in the sums as represented by said notes, and that the estate received benefits in that amount from plaintiff bank; that he had no funds to employ counsel to maintain litigation or pay the expense of administration; that he had made diligent investigation and had been unable to find any property belonging to the estate, except an undivided half interest in two vacant lots; and that if the bank building referred to was not a part of the assets of the estate, the estate was insolvent.

The matter was submitted to the court, without a jury, on an

agreed statement of facts and on evidence taken. The interests of M. R., Helen, and Armontine Sanders in the real estate have been surrendered under the levy of the execution, and are not involved. The court found that the real estate in which the eighth item of Mrs. Sanders' will created the trust should be sold by O. A. Carter, successor-trustee; that of the amount represented by the note for $653.03 the evidence authorized the finding that $314.57 was used for the purpose of paying taxes on the trust property; and that from the proceeds of the sale of the real estate this amount, with interest, should be paid to the superintendent of banks. There was a finding "against any recovery on behalf of the plaintiff on the note" for $1666.66, because "the executor was not authorized to borrow money," and "the evidence not being sufficient" to show that any portion of the money represented by that note went to pay taxes. The decree further provided, that, after payment of the costs of litigation and the amount above mentioned, the balance of the proceeds from the sale should be applied in payment of the stock assessment against the children of Mrs. Montine Hinton.

Carter, trustee, assigned error as follows: (1) As a matter of law the evidence and the agreed statement of facts show that the execution issued on the assessment on the stock was invalid and should not be levied against the trust estate under item 8 of the will, but should be canceled and its further levy should be enjoined. (2) It appeared that the trust under item 8 of the will was separate and distinct from that created in the third item and was not liable to the stock assessment, and the court erred in holding that the trust under item 8 was so liable. (3) The court erred in decreeing that the real estate was liable for assessments against stock held by M. R., Helen, and Armontine Sanders, because the same was not liable therefor. (4) The court erred in overruling the motion of Carter, trustee, on the general grounds, for a new trial.

Maynard R. Sanders, administrator with the will annexed, makes three assignments of error: (1) That the finding that plaintiff was not entitled to recover on the note for $1666.66 is contrary to the evidence, the law, the principles of justice and equity, "and is contrary to the admissions made by the parties to the case in the pleadings, the plaintiff having alleged that said

note represented advances of moneys made to Mrs. Fannie A. Sanders' estate and for its benefit, and the administrator of said estate, Maynard R. Sanders, having admitted this to be true in his answer." (2.) The finding that only $314.57 of the note for $656.03 should be paid is contrary to the evidence, the law, the principles of justice and equity, because the court "should have found and adjudged, under all of the evidence in the case and the admissions in the pleadings, that" the additional sum of $326 "was used to pay taxes on the property" of the estate, and "that the plaintiff was entitled to recover said sum." (3) The provision of the decree that the real estate be sold by Carter, successor-trustee, is contrary to law; and since the court found that there were debts outstanding against the estate of Mrs. Fannie A. Sanders, this defendant, as administrator of said estate with the will annexed, was and is the only person entitled under the law to administer said estate, and the court should have so ordered.

Davis, superintendent of banks, assigns error on the portion of the decree that plaintiff was not entitled to recover on the note for $1666.66, and that the evidence was not sufficient to show that any of the money of the State Banking Company represented by said note went to pay taxes against the trust property involved in this litigation, because such portion of the judgment is contrary to the evidence, the law, the principles of justice and equity, and the admissions made by the parties to the case in the pleadings, "the plaintiff having alleged that said note represented advances of moneys made to Mrs. Fannie A. Sanders' estate and for its benefit, and the administrator of said estate, Maynard R. Sanders, having admitted this to be true in his answer; and further, because the uncontroverted testimony showed that the estate of Mrs. Fannie A. Sanders did receive the benefit of said note."

■ The superintendent of banks filed a motion to dismiss the bill of exceptions filed by Carter, trustee, "on the ground that the record discloses that the plaintiff in error is not interested in the litigation and will not be affected by the judgment rendered or to be rendered in this case; that he is a party not aggrieved by the judgment of the trial court and is, therefore, without legal right to except to the judgment and has no just cause to complain

of the same." The motion is overruled. The equitable petition filed by the superintendent of banks made Carter, trustee under the will of Mrs. Sanders, a defendant. Under the eighth item of the will the bank building was devised to a trustee to be held for the benefit of her daughter, Mrs. Hinton, during her life, and at her death to be sold by the trustee and equally divided between the designated grandchildren of the testatrix. The first trustee died, and Carter was duly appointed to succeed as to the bank building. At the time of his appointment, July 5, 1930, Mrs. Hinton had died, and Carter held the legal title to the bank building as trustee. Under the will it became his duty to sell the property and to distribute the proceeds in accordance with the terms of the will, but he had not done so when the suit was filed. So Carter was defendant in his representative capacity, holding the legal title to the property sought to be subjected to the assessment made by the superintendent of banks, and it was his right and duty to protect the interests of his cestuis que trust. Having been made a party, he was, in his representative capacity, interested in the litigation and legally entitled to sue out a bill of exceptions to review the judgment of the trial court. The facts of this case with reference to the right of the trustee to sue out a bill of exceptions do not fall within the terms of the Civil Code (1910), § 6176, as occupying a position similar to a sheriff with regard to a money rule, or a receiver, or "other party occupying a similar position." Movant contends that the bill of exceptions should be dismissed under the ruling in *Lamar* v. *Lamar*, 118 *Ga.* 684 (45 S. E. 498), and quotes from the opinion as follows: "It has, we believe, ever been the law, both in this State and in other jurisdictions, that a party not aggrieved by the judgment of a trial court is without legal right to except thereto, since he has of it no just cause of complaint." The sentence just quoted is the first sentence in the first paragraph of the opinion and is a sound proposition of law. However, applied to the facts of this case, a result would follow the opposite to that reached in the *Lamar* case. The first headnote in that case is as follows: "It is not the privilege of a party to an action to except to the judgment therein rendered, *unless he is, either as an individual or in a representative capacity* [our emphasis], aggrieved thereby." Thus it will be seen that if one is interested "in a representative

capacity" and is aggrieved thereby, it is his privilege to except to the judgment rendered. In the opinion the facts in the *Lamar* case are brought out, and it is explained that Henry J. Lamar, who sued out the bill of exceptions, was not entitled to except in his representative capacity "first, because he did not, as such trustee, resist the effort made to. compel a distribution of the funds in controversy or offer any objection to the proposed method of distribution, and secondly, because he did not in that capacity sue out the bill of exceptions."

■ The court erred in rendering a decree against Carter, trustee, for the payment of the assessments made on the bank stock. Carter was not at any time trustee of the bank stock, which was disposed of under the. third item of the will of Mrs. Sanders. Under the third item of the will a trust was created for the holding of the bank stock during the life of Mrs. Hinton, the daughter of testatrix, and at the death of Mrs. Hinton it should be divided between the latter's children. The trustee, Atkins, was the trustee for that purpose, and continued to be until Mrs. Hinton died, February 7, 1930. When Mrs. Hinton died that trust became executed and the stock automatically became the property of the children of Mrs. Hinton. This is true, notwithstanding the fact that no. transfer of the shares to them on the books of the bank had ever been made. Civil Code (1910), § 2219; *Clay* v. *Mobley*, 171 *Ga.* .548, 551 (156 S. E. 194). Shortly after the death of Mrs. Sanders, T. E. Atkins, who was both executor and trustee under the will, caused the bank stock to be transferred on the books of the bank to himself "as trustee for Mrs. Armontine Sanders Hinton," and thereafter paid all dividends to her. Atkins also being executor of the estate of Mrs. Sanders, his act in causing the stock to be transferred to himself as trustee for Mrs. Hinton amounted. to an assent to that legacy. The estate of Mrs. Sanders owed nothing except expenses of her last sickness, burial, and the like, which were paid within sixty days. Besides the bank stock and the bank building, Mrs. Sanders left $2654.35 in cash in bank, a home in Gainesville worth $9000, and some other property of small value. It would follow from this that the bank stock ceased to be the property of Mrs. Sanders' estate. When the bank failed and was placed in the hands of the superintendent of banks on May 5, 1930, he could

not legally make an assessment on the stock against the estate of Mrs. Sanders. He could not make an assessment against the estate of Mrs. Hinton, because her estate had no interest in the bank stock, she having had only a life interest. Carter, the trustee, having been appointed long after Mrs. Hinton's death and about two months after the bank failed, was made trustee only to hold the real estate in trust for the grandchildren, as provided in the eighth item of the will. The trust as to the bank stock had ceased. An equitable suit then against the estate of Mrs. Sanders, represented by an administrator with the will annexed, to enforce an assessment on the stock against her estate, could not prevail. She had been dead approximately six years. The stock had been transferred six years. The assessment on the stockholders was made against "each of the shares of stock," and execution was issued on September 8, 1930, "against O. A. Carter, as successor-trustee, under the will of Mrs. Fannie A. Sanders." Under the facts of the case, O. A. Carter is not successor-trustee, under the will, for the bank stock. The order of his appointment as trustee shows that he was made trustee only of the bank building. No successor to Atkins, trustee for the bank stock, could have been appointed, since Mrs. Hinton died several months before trustee Atkins died. The children of Mrs. Hinton are not made parties to this suit except through their trustee, Carter, who is trustee for them only with respect to their interest in the real estate. We disregard the execution, because it is not issued against any one who is a party to the case, against whom any judgment is sought to fix liability for the stock assessment. Carter, trustee, is a party; the children of Mrs. Hinton are not parties. Carter does not in any capacity represent the children with respect to the stock assessment. The liability for the stock assessment must first be fixed before the superintendent can legally subject any property to the satisfaction of that liability. The execution issued by the superintendent is not being enforced or sought to be enforced. This equitable action is substituted for it as a remedy. For these reasons the judgment on the bill of exceptions by Carter, trustee, is reversed.

On the question whether, if they were parties, an assessment against the children directly could be enforced against their beneficial interest in the real estate, we do not rule. That question

is not involved in the present case. We find nothing in the record to show either acceptance or refusal to accept the bank stock by the children of Mrs. Hinton. Hence we omit any observations on that question. In *Cozart* v. *Mobley,* 43 *Ga. App.* 630 (159 S. E. 749), while there was no assent to the legacy so far as is shown in the statement of the case, it was held that where a bank failed about twenty years after the death of the testatrix, it would be presumed that the legacies were or ought to have been assented to. It was also held that the presumption would not be overcome merely by reason of the alleged fact that the executrix kept the property intact without making a distribution to the legatees, and in the meantime allowed the stock to remain registered on the books of the bank in the name of the testator. The losing party in that case filed in the Supreme Court a petition seeking to review the judgment of the Court of Appeals, and the petition was denied. While the denial of the petition is not conclusive, it is at least persuasive. In the present case assent is affirmatively shown.

Counsel for the superintendent of banks call attention to the act of 1919 (Ga. L. 1919, pp. 135, 189, Park's Code Supp. 1922, § 2279(b)). That section relates to the liability on bank stock payable by executors, administrators, guardians, or trustees; and counsel say that the decision in *Clay* v. *Mobley,* supra, dealt with that section as applied to a case almost precisely like the present. They insist that "the only difference is that in the *Clay* case, instead of debtors, there was a testator, and instead of creditors there were legatees; so that when we substitute these words and change the second headnote to a question, we get the identical one that is before this court for determination. In the *Clay* case this court held that the trust funds in the hands of the trustees were subject to the stockholders' liability." We can not see that the section of the statute just quoted has any application to the present case, nor has the case of *Clay* v. *Mobley* any application. We have held in this case that the shares of stock were not held by an executor, administrator, or trustee. We have held that the stock passed out of the estate of Mrs. Sanders when the legacy was assented to by the executor and the stock was transferred on the books of the bank to the trustee of Mrs. Hinton, and that six years elapsed after that before the liability on the part of any

one arose because of the ownership of the bank stock. The court erred in overruling the motion for a new trial raising the question dealt with in this division of the opinion.

■ "An administrator, by virtue of his appointment as such, has no legal right to borrow money and bind the estate by a note and mortgage given therefor, although the money was borrowed for the benefit of the estate." *O'Kelly* v. *McGinnis,* 141 *Ga.* 379 (81 S. E. 197) ; *Harris* v. *Woodard,* 133 *Ga.* 104 (65 S. E. 250) ; *Putney* v. *Bryan,* 142 *Ga.* 118 (82 S. E. 519). "Nor will the fact that the money may have been used for the benefit of an insolvent estate to pay debts give the lender an equitable lien on the mortgaged property or other assets of the estate." Thompson *v.* Mann, 65 W. Va. 648 (64 S. E. 920, 22 L. R. A. (N. S.) 1094, 131 Am. St. R. 987), *O'Kelly* v. *McGinnis* and *Putney* v. *Bryan,* supra. "Where money is borrowed and used by an administrator of an insolvent estate, . . the lender, having advanced it to him voluntarily and without being forced to do so in order to protect any right of his in the property, will not become subrogated to the rights of creditors whose debts have been paid." *Wilkins* v. *Gibson,* 113 *Ga.* 31 (38 S. E. 374, 84 Am. St. R. 204) ; *Ragan* v. *Standard Scale Co.,* 128 *Ga.* 544 (58 S. E. 31) ; *Putney* v. *Bryan,* supra. In the absence of power either express or necessarily implied in the will, the executor stands upon the same footing as to borrowing money as an administrator, and it is well settled that an administrator has no power to borrow money and bind the estate by the execution of a promissory note. It can make no difference when the money was borrowed for the purpose of paying taxes due by the estate. The bank, in lending the money, so far as the record shows, pursued the ordinary course of business, lending the money for the purpose of earning interest. Its action was entirely voluntary, without being forced to do so in order to protect any right it had in the property; for it had no such right or interest. The bank could have pursued a course of noninterference in the matter, could have permitted the parties interested in the property to obtain funds on their own credit to pay the taxes, or could have allowed the property to be sold for taxes, without hurt to itself. In thus lending the money to the representative of an estate who was without power in that particular matter to represent the estate, the transaction in law was

one simply between the bank and the executor acting in his own individual capacity. In these circumstances it would be contrary to law and equity to permit the bank to be subrogated to the rights of the taxing authorities. However essential it was that the taxes be paid, that did not concern the bank.

The executor was also trustee, and for the protection of his cestuis que trust could have sought and, if the facts shown so authorized, could have obtained from the court acting as chancellor the power necessary to protect the wards. *Wagnon* v. *Pease,* 104 *Ga.* 417 (30 S. E. 895); *Hughes* v. *Treadaway,* 116 *Ga.* 663, 671 (42 S. E. 1035). "The assets of such estate are only bound for the debts contracted by the testator during life." *McFarlin* v. *Stinson,* 56 *Ga.* 396; *Lynch* v. *Kirby,* 65 *Ga.* 279, 281. The bank or any one else could have paid the amount due as taxes and caused a transfer of the executions. The bank, as a matter of law, knew that the executor was without power to borrow. Atkins was president of the bank when as executor he executed the notes. He was therefore, as executor, doing business with himself as president of the bank. Therefore the court erred in rendering a decree requiring the trustee to pay the sum of $314.57, with interest, to the superintendent of banks in payment of an amount decreed to be due by the estate to the insolvent bank.

It is insisted by plaintiff in error that the decree was contrary to admissions in the pleadings of the parties. The petition alleged that Atkins, "during his incumbency as executor of said estate of Mrs. Fannie A. Sanders, deceased, became indebted to the State Banking Company, which said indebtedness was represented by two notes," that "these notes represent advances of money made to said estate and for its benefit," and that that fact was admitted by the answer of the defendant, Sanders, administrator. We find from the pleadings that the petition alleged the borrowed money was used for the benefit of the estate, but we also find that the answer of Carter, trustee, denied that allegation, and furthermore alleged that "defendant is informed and believes that the said notes do not represent legal or valid debts of the estate of Mrs. Fannie A. Sanders." Sanders, administrator with the will annexed, admitted the allegation of the petition. The admission can not change the result. Even if the money had been used for the benefit of the estate, as shown above, the estate is not bound

by the contract. Even if the administrator admits benefits received, the court is not authorized to render a judgment contrary to law. Moreover, such admission cannot have the effect of subjecting property not within his control to the judgment rendered.

■ It is insisted by plaintiff in error, Sanders, that the court erred in directing the trustee, Carter, to sell the property for the purpose of paying the notes given by the executor, because, under the law he as administrator of the estate of Mrs. Sanders was legally bound to sell the property for the purpose of paying the debts of her estate. The bank building is not a part of the property of the estate and was not at the time the bank failed and went into the hands of the superintendent of banks for liquidation. The only debts claimed to be due by Mrs. Sanders' estate, aside from the stock assessment, are the notes made by the executor to the bank. One of these notes was disallowed by the trial judge. The law and the evidence support that finding. The other note, which was ordered paid by the trial judge, as stated above, can not be collectible out of the estate. Neither Carter, trustee, nor Sanders, administrator, under the pleadings and evidence, can lawfully sell the real estate for the purpose stated. From what has been said it follows that the decree of the trial court is reversed, because it was error to decree the payment of $314.57 and interest to the superintendent of banks because of money borrowed by the executor to pay taxes, and to order the sale of the bank building for the purpose in part to satisfy the aforesaid decree.

■ The superintendent of banks sued out a bill of exceptions complaining that the court erred in refusing to order Carter, trustee, after the sale of the real estate, to pay from the proceeds thereof a note for $1666.66 and interest, signed by Atkins, executor, payable to the bank. What has been said with respect to that note, as well as the other note, in deciding the issue raised by Sanders, administrator, against Davis, renders further discussion unnecessary. The court did not err in holding that the estate was not liable on that note.

■ The sixth headnote does not require elaboration.

The judgment on the bill of exceptions sued out by Carter, trustee, No. 8728, is *reversed*. The judgment on the bill of exceptions sued out by Sanders, No. 8729, is *reversed in part and*

*affirmed in part.* And the judgment on the bill of exceptions sued out by Davis, superintendent, No. 8732, is *affirmed.* All the Justices concur, except Hines, J., absent for providential cause.