STEWART, DUNHOLTER & CO. *v.* SHOLL *et al.*

1. It is the duty of the clerk of the superior court, whether spe-
cially so requested or not, to enter upon the attachment docket
which the act of December 20th, 1890 (Acts 1890-91, vol. 1, p.
208), requires him to keep, all attachments filed in his office; and
if he fail to enter an attachment so filed within the time fixed
by law, and his failure to do so in any particular instance results
in injury to the plaintiff in attachment, the clerk and his sure-
ties upon his official bond are liable in damages.

2. A judgment rendered in a superior court of this State in an
action founded upon a judgment rendered in another State, is
not void because rendered by the judge without intervention of
a jury, it not appearing that any plea presenting an issue of fact
triable by a jury had been filed by the defendant.

October 26, 1896. Argued at the last term.

Action on bond.   Before   Judge   Milner.   Whitfield
superior court.   October term, 1895.

Suit was brought on the official bond of Sholl as clerk of
the superior court.   The case was submitted to the judge
without a jury.   He rendered judgment for the defend-
ants, and the plaintiffs excepted.   It appears, that on No-
vember 14, 1892, plaintiffs sued out an attachment against
J. B. Rock, which was levied on the same day upon a lot
of land by a constable.   It was returnable to the April
term, 1893, of the superior court.   It was handed by one
of plaintiffs' counsel to the clerk on November 21,
1892, and was marked filed on that day, but was not en-
tered on the attachment docket nor other docket as required
by the act of 1890.   Counsel did not request the clerk to
enter it on any docket.   The clerk testified that he acted
in good faith, and would have entered it if he had been so
requested.   He had an attachment docket in his office at
the time.   At the April term, 1893, plaintiffs filed their
declaration against Rock, setting out as a cause of action a
judgment rendered against him by a court of Tennessee;
and at the next October term a judgment was rendered

against him in their favor. Execution issued from this judgment, and was levied on the land upon which the attachment had been levied. J. W. Crouch thereupon filed a claim to the land, it being worth more than plaintiffs' judgment, and upon the trial of the claim the land was found not subject to the execution. Crouch claimed title alone by virtue of a deed from Rock, dated May 30, 1893, and recorded June 8, 1893. Plaintiff's counsel endeavored to find evidence that Crouch had notice of the attachment, but was unable to find such evidence. On the trial of the claim case Crouch (who was a resident of Tennessee) denied any notice of the attachment at the time he took the deed. Counsel for plaintiffs endeavored in good faith to subject the land, but was unable to do so.

*R. J. & J. McCamy*, for plaintiffs.
*Jones & Martin*, for defendants.

ATKINSON, Justice.

The facts are stated in the official report.

1. By the act of the General Assembly approved December 20th, 1890 (Acts 1890-91, vol. 1, p. 108), it is made the duty of the clerk of the superior court of each county to keep an attachment docket in which he is required to enter the names of plaintiff and defendant in attachment, the court to which it is returnable, the amount claimed, the day and hour of levy, and a brief general description of the property levied upon; and the lien of an attachment thus entered is protected against a transfer of the property levied on by the defendant in attachment, or the creation of any lien thereon by him. The question is, whether the clerk of the superior court must, in the absence of a request to so enter an attachment levied and filed with him, enter it upon the docket in response to the duty imposed by the statute. We think he must. The law imposes upon him this duty for the protection of plaintiffs suing out attachments. Its performance is not left to

his discretion, nor is it made dependent upon a direction from the parties at interest that he comply with this plain mandate of the law. The statute is itself imperative, and if he neglect the duty thus imposed, and another by reason of his failure to perform it suffers injury, the person injured may recover against the clerk and the sureties on his official bond. It is for the protection of the general public against such omissions of duty that the official bond is required, and in so far as the judgment of the lower court denied to the plaintiffs the right of recovery because of a failure upon their part to request the clerk to perform this duty, the judgment was necessarily erroneous.

2. It was urged, that even though the defendant neglected to perform the duty above referred to, the plaintiffs were notwithstanding not entitled to recover, because of the fact that the judgment, the lien of which was alleged to have been lost by reason of the misfeasance of the clerk, was void, it having been rendered by the court without the intervention of a jury; and that for this reason it created no lien upon the property of the defendant, and as a consequence the plaintiffs sustained no injury. It appears from the record in this case, that the plaintiffs in the court below, having recovered a judgment in the State of Tennessee against one Rock, caused an attachment to issue thereon and to be levied upon the property of the defendant in the foreign judgment, said property so levied upon being situated in the State of Georgia. A declaration was duly filed declaring upon the judgment rendered in the State of Tennessee, and upon the trial of that cause the court awarded judgment without the intervention of a jury. It was insisted that the foreign judgment was not an unconditional contract in writing, and that therefore the court had no authority to render judgment thereon without the intervention of a jury.

It was the purpose of the constitution of this State, paragraph 1, section 18, article 6, to preserve the right of trial

by jury as it stood at the time of the adoption of that con-
stitution, except as therein specially provided. One of
the exceptions specially provided was in favor of the rendi-
tion of judgments by the court without the intervention of
a jury upon unconditional contracts in writing. It was
the purpose of this constitutional provision to preserve
this right as it then stood, not to extend the right of
trial by jury beyond the limits of that right as it existed
prior to its adoption. It will be borne in mind that this
provision did not make its first appearance in the present
constitution. A similar one appears in each of the several
constitutions of the State of Georgia adopted prior to that
of 1877. It came to us from the declarations of *Magna
Charta*, and has stood as a constant expression of the pub-
lic mind in favor of the preservation unimpaired of this
great bulwark of civil liberty. The limitations upon
this right are to be found in the common law, and except
only in so far as it has been modified by the constitution,
it remains of force in this State to the same extent only as
it existed at common law. To preserve the right of trial
by jury so that it shall remain "inviolate" is one thing; to
extend it to cases in which jury trials were never allowed,
according to the ancient practice which prevailed at com-
mon law, is entirely a different thing; so that where jury
trials are neither specially enjoined nor prohibited by the
constitution of this State, in order to determine whether in
a given case a jury trial may be demanded, we must have
recourse to the common law. It was insisted upon the
argument here that a foreign judgment was not an uncon-
ditional contract within the meaning of that term as em-
ployed in the constitution of this State, and that therefore
it did not fall within that class of cases in which the court
was authorized to render a judgment without the interven-
tion of a jury. We do not desire to enter upon a discus-
sion of the doubtful question as to whether a judgment
of a court of record can be properly classed as a contract or

not; but we prefer to rest our conclusion against the contention of the defendants in the court below upon the broader ground, that as to suits upon judgments of courts of record, where no defense is filed which calls in question the validity of the judgment, the right of trial by jury does not and has never existed as matter of law. It appears from the record that no plea presenting an issuable matter of fact was filed to this suit. It is a mistake to suppose that in this State the right of trial by jury extends to all cases, or that the verdict of a jury is a necessary and indispensable predicate to the rendition of a judgment. The office of a jury is to determine disputed matters of fact, and if there be no matter of fact in dispute, there is nothing upon which the court is at liberty to invoke the finding of the jury. At common law there were many methods of determining disputed rights; trial by wager of battle was one, trial by jury another, and trial by inspection of the record was yet another. The latter method was the one resorted to where the rights of the parties had been previously judicially ascertained and stated upon the records of the court. In pronouncing upon those rights it was the duty of the judges alone to declare, and even when a formal plea of *nul tiel* record was filed, the court proceeded to judgment upon an inspection of the record alone. Referring to the trial of this issue, the rule laid down in Blackstone's Commentaries is as follows: "The trial therefore of this issue is merely by the record; for, as Sir Edward Coke observes, a record or enrollment is a monument of so high a nature, and importeth in itself such absolute verity, that if it be pleaded that there is no such record, it shall not receive any trial by witness, jury or otherwise, but only by itself." Hammond's Blackstone's Commentaries, vol. 3, p. 442. Stephen, in his work on Pleading, page 101, in such cases states the practice to be as follows: "The trial by the record applies to cases where an issue of *nul tiel* record is joined in any action. If a record be asserted on one side to

exist, and the opposite party deny its existence, under the form of traverse, that there is no such record remaining in court as alleged, and issue be joined thereon, this is called an issue of *nul tiel* record, and the court awards in such case a trial by inspection and examination of the record. Upon this the party affirming its existence is bound to produce it in court, on a day given for the purpose; and if he fail to do so, judgment is given for his adversary. The trial by record is not only in use when an issue of this kind happens to arise for decision, but it is the only legitimate mode of trying such issue, and the parties cannot put themselves upon the country." See also Adams *v.* Betz, 26 American Decisions, p. 81; *Dudley's (Ga.) Reports*, 255. If then the fact as to whether a given judgment had been rendered is determinable by the court only, by inspection, and without the intervention of a jury, it is idle to say that it is within the province of a jury to declare upon the legal effect of the judgment. That matter is one necessarily for the court; and it must pronounce upon the rights of the parties as they stand stated on the record. The act of Congress gives to judgments of other States, regularly rendered according to the laws of those States, full faith and credit in this State, and there being no attack upon the judgment sued on in the present case, such as would have been allowable as against a judgment rendered in this State, the courts of this State are bound by that judgment, and must, as matter of law, decree accordingly. They are not at liberty to do otherwise than declare as against the defendant that he is concluded as though the judgment had been rendered in one of the courts of this State. The suit upon this foreign judgment may be likened unto a suit by *scire facias* to revive a judgment which has been rendered by one of the courts of this State, and which has become dormant. In such a case, where no attempt is made to impeach the judgment by matter of fact competent to be proven outside the record, the court upon

inspection of the record alone pronounces judgment of revivor, as matter of law, and so in a suit upon a foreign judgment, it likewise pronounces as matter of law. The trial of this question was by inspection alone, and was properly determinable by the court without the assistance of a jury.

We conclude, therefore, that whether the judgment of the court in the present case was adverse to the plaintiffs, because the judgment obtained on the foreign judgment was void, it having been rendered without the intervention of a jury, or whether it was adverse to the plaintiffs because of the opinion entertained by the court, that, upon the facts stated, the clerk was guilty of no breach of duty, it was in either event wrong, and it is accordingly

*Reversed.*