HARRIS, executor, *v.* WOODARD, administrator.

1. In a suit upon a written contract, wherein no issuable defense has been filed on oath or affirmation, the superior court has no jurisdiction to render judgment without the intervention of a jury, unless such judgment can be rendered without resort to any evidence except that afforded by the contract sued on.
2. An executor has no power, ex officio, to bind the estate which he represents, by the execution of a promissory note. In order for him to have such power, it must be conferred upon him by the will.
3. An executor, as such, is not estopped to attack the validity of a judgment which is sought to be enforced against the property of the estate which he represents, by allegations or admissions in reference to such judgment, made by him in a judicial proceeding which he, in his individual capacity, brought against the judgment creditor.
4. Nor is he thus estopped if such judicial proceeding were brought by him in his representative capacity, when the estate which he represents derived no benefit and the judgment creditor received no injury in consequence of such allegations or admissions.
5. Upon the trial of an illegality case the title to the property levied upon is not involved, and evidence offered by the plaintiff in execution for the purpose of showing that, prior to the levy, the defendant in execution had conveyed such property to a third party is irrelevant and immaterial.

Argued January 20, — Decided June 15, — Rehearing denied August 4, 1909.

Illegality of execution. Before Judge Felton. Houston superior court. April 8, 1908.

In September, 1898, F. W. Gano brought, in the superior court of Houston county, a suit to recover the balance due upon a promissory note, which the petition alleged was "executed to petitioner" by "W. H. Harris, executor of will of H. C. Harris," and "endorsed by W. H. Harris." Attached to the petition was a copy of the note, from which it appeared that the note was dated Sept. 24, 1895, that the maker therein obligated himself in the following language: "Jany. 1, after date, I promise to pay to F. W. Gano, or order, twenty-five hundred . . dollars, for value received," etc., and signed the instrument, "W. H. Harris, Exr. of Will of H. C. Harris," and that the note was, in the conventional sense, "Endorsed: W. H. Harris." The petition alleged that there was "due upon said note by said W. H. Harris, executor, as maker, and W. H. Harris, as endorser, the principal sum of $2,000.00," etc. Process was prayed against "said W. H. Harris, executor, and W. H. Harris, endorser." In the process attached by the clerk to the pe-

tition the case was stated as follows: "F. W. Gano *vs.* W. H. Harris, Extr.," and the process simply required "The defendant . . to be and appear," etc. The entry of service showed service on "W. H. Harris, Exr., the Deft. in this case." No defense was filed to the suit.. On Oct. 3, 1899, judgment was rendered as follows: "It appearing that this is a suit on an unconditional contract in writing, and that no issuable defense on oath has been filed to the same, it is therefore ordered and adjudged that the plaintiff do recover of the defendant the sum sued for, to wit," etc. An execution was issued upon this judgment, wherein the sheriff was commanded, "that of the goods, chattels, lands, and tenements of W. H. Harris, executor of H. C. Harris," he should cause to be made the amount of the judgment. On October 7, 1903, upon the ex parte application of the plaintiff, and without the knowledge or consent of the defendant, the judgment was so amended as to make it de bonis testatoris, that is, one to be "levied on the goods, chattels, lands, and tenements of H. C. Harris, deceased, in the hands of W. H. Harris, executor, to be administered." On November 2, 1903, the clerk of the court so amended the execution as to make it correspond to the judgment as amended. On March 9, 1904, the sheriff levied the amended execution upon certain real estate, "as the property of the estate of H. C. Harris, deceased, and found in the possession of W. H. Harris, executor of H. C. Harris." Subsequently the sheriff made this additional entry upon the execution: "Due search made, and no property of the estate of H. C. Harris in the hands of W. H. Harris, executor, to be found in Houston county, upon which to levy the within fi. fa. This the 6th day of March, 1905." On May 14, 1907, an affidavit of illegality, containing nine grounds, was interposed to the levy by W. H. Harris as executor. Ground 1 alleged that the judgment from which the execution issued was void, "but, if valid, it was a judgment against W. H. Harris individually and not against him as executor, and that no judgment de bonis testatoris was rendered in said suit, that none could have been rendered on the pleadings;" that the judgment was rendered without the intervention of a jury, "and . . no valid judgment de bonis testatoris could have been rendered . . without the introduction of evidence, and therefore without the verdict of a jury." The facts as to the amendment of the judgment and the amendment of the

execution were also averred, and it was alleged "that no valid judgment collectible out of the assets of said estate could be rendered on the pleadings in said suit," and that the amendments to the judgment and execution were illegal and void. In ground 2 it was alleged, that the fi. fa. issued "illegally, because the only process issued and served . . was against 'W. H. Harris, Exr.,' that the only service made was upon 'W. H. Harris, Executor,' and . . this process, if a valid and legal process, was solely against W. H. Harris individually; wherefore deponent charges that the declaration in said suit was against W. H. Harris individually, the process was against him individually, and that deponent as executor, the defendant in the above-named fi. fa., was never served with process, or other notice of the pendency of any suit of F. W. Gano against him as executor of the will of H. C. Harris, . . and never by himself or any agent or attorney waived such service or notice, nor did he as executor ever appear or plead to said suit or action." The plaintiff in execution demurred to all of the grounds of the illegality. When the case came on to be heard, four of these grounds were withdrawn by the defendant, and the court sustained the demurrer as to three of the remaining grounds, but overruled it as to grounds 1 and 2 above set forth. The case then proceeded to trial before a jury. The defendant in execution, in support of the illegality, introduced the entire record in the suit wherein the judgment in question was rendered, including the original judgment and execution and the amendment to the judgment and the corresponding amendment to the fi. fa., together with all the entries upon the execution. He testified that he was "executor of H. C. Harris," and did not have any notice of the amendment to the judgment, and "first ascertained that the judgment and fi. fa. had been amended some time in 1906;" that he "filed no plea to this suit," and "did not know how the judgment was taken." The plaintiff in fi. fa. introduced certain documentary evidence, from which it appeared that "W. H. Harris, Exr. Will H. C. Harris," had brought a petition for injunction against F. W. Gano, and, upon complying with a certain condition as to giving bond, imposed upon him by the court, had, upon the allegations of his petition, obtained an injunction restraining Gano from proceeding to enforce the judgment now in question, and from selling or transferring the same, until certain

suits brought by Harris against the firm of Gano & Jennings should be disposed of. The plaintiff in execution also introduced a portion of the answer filed by Harris in a suit brought against him by Woodard, as administrator of the estate of F. W. Gano, deceased, after the entry of nulla bona had been made upon the execution, wherein Harris had alleged that the judgment involved in the present case was not against him individually and that he was not indebted to the plaintiff any sum whatever. The plaintiff then introduced the will of H. C. Harris, wherein W. H. Harris was appointed executor, the second item of which was as follows: "I will that my said executor shall have all the powers and rights, with reference to the management of all property left by me, that I myself would have if living; that, without any order of any court or judge whatever, he may sell, incumber, reinvest, or purchase any property, real or personal, money, stocks, or other property; and that such transaction shall be as valid and binding upon my estate as if done by me in person; my purpose being that for all purposes in the management of my property and business my said executor shall stand in my place and stead; his judgment being the sole guide and authority for all his actings and doings as my legal representative. And I direct that he be not required to make any returns of his actings and doings as my executor to any court." The plaintiff also introduced a deed, dated March 2, 1904, made by W. H. Harris, executor of the will of H. C. Harris, to W. H. Hollinshead, conveying, for an alleged consideration of $8,100, the property levied on.

Upon the conclusion of the evidence and the argument, the court directed a verdict in favor of the plaintiff in execution and against the illegality, "and with direction that the execution do proceed." The defendant in execution excepted.

*Miller, Jones & Miller,* for plaintiff in error.

*H. A. Mathews* and *A. C. Riley,* contra.

FISH, C. J. (After stating the facts.) While there is much force in the contention that the suit which eventually resulted in the judgment in question was simply against W. H. Harris as an individual, and not against him as the executor of the will of H. C. Harris, and therefore that no judgment de bonis testatoris could have been rendered therein, we pass over the questions of construction raised as to the petition, process, and service, and come to a

question the solution of which is, we think, free from doubt or difficulty. Was the judgment as amended one which the court could render, without the intervention of a jury, under its power to so render judgment against a defendant in a suit upon an unconditional contract in writing, when no issuable defense is filed on oath or affirmation? Of course, if such a judgment could not have been rendered by the court originally, it could not be reached through a subsequent amendment of the original judgment. The court can render judgment, without the intervention of a jury, only in a suit upon an unconditional contract in writing, wherein no issuable defense has been filed on oath or affirmation, when the liability of the defendant can be definitely ascertained from a mere examination of the pleadings and the contract sued on. The pleadings are examined to ascertain who are the parties to the case, the character of the suit, the liability therein alleged, and whether any issuable defense on oath or affirmation has been filed. The contract sued on is exhibited to and inspected by the court for the purpose of ascertaining whether, upon the face thereof, it appears to be unconditional and the defendant is liable thereon as alleged. No oral evidence can be introduced and no written evidence other than the contract itself; whenever it is necessary to resort to such evidence in order to make out the plaintiff's case, the intervention of a jury is required and the judgment must be based upon a verdict. Even if the note involved in the present case—which appears to be the individual obligation of W. H. Harris, as the promise is simply in personam and the words "Extr.," etc., which follow the signature of the maker, are apparently descriptio personæ merely— were construed to be an undertaking by the maker in his representative capacity as executor of the will of H. C. Harris, the court could not from its inspection have ascertained whether the estate of the testator was liable thereon or not; as it is well settled that an executor has no power, ex officio, to bind the estate which he represents, by the execution of a promissory note. *McFarlin* v. *Stinson, 56 Ga.* 396; *Lynch* v. *Kirby, 65 Ga.* 279. See also *Howard* v. *Cassells,* 105 *Ga.* 412 (31 S. E. 562, 70 Am. St. R. 44). Before a judgment could be rendered against the estate, it would have to be shown that such authority had been conferred upon the executor by the will, and this would involve the introduction of the will in evidence, and the necessity for the introduction of evidence

other than the contract sued on would require the intervention and verdict of a jury. The original judgment, which was in personam, was the only one which could have been rendered without the verdict of a jury. To allow this judgment to be, by amendment thereof, changed from one de bonis propriis to one de bonis testatoris, would be to permit the plaintiff to obtain a judgment against the estate of H. C. Harris without ever having submitted the proof necessary for such purpose, and in a way unauthorized by the law even if such proof were presented. The judgment as amended was, therefore, void.

In support of his contention, that, "If the rendition of this judgment was not proper without a jury, the irregularity made the judgment, not void, but simply erroneous," counsel for the defendant in error cites: *Georgia Railroad Co.* v. *Pendleton,* 87 *Ga.* 751 (13 S. E. 821) ; *Crow* v. *American Mortgage Co.,* 92 *Ga.* 816 (19 S. E. 31) ; *Stewart* v. *Sholl,* 99 *Ga.* 534 (26 S. E. 757). The first and second of these decisions hold, that, "in a case admitting of doubt, the question of rendering a judgment by the superior court without a jury is one not involving jurisdiction, but the proper exercise of jurisdiction, and the improper decision of it is mere error and will not render the judgment void." The present case differs from each of those, in that, unlike them, it is not a case "admitting of doubt" as to the power of the court to render a judgment without the verdict of a jury. Mr. Justice Samuel Lumpkin, who delivered the opinion of the court in each of those two cases, in a later case said: "In a case where it plainly and palpably appeared that the contract was not unconditional, a judgment rendered by the judge without a jury might be collaterally attacked as void; but in cases of doubt, everything should be presumed in favor of the jurisdiction, and even an error in adjudicating that a contract was unconditional could not be attacked by illegality." *Manning* v. *Weyman,* 99 *Ga.* 57, 59 (26 S. E. 58). In the case under consideration it plainly appears that no judgment could be lawfully rendered against the estate of H. C. Harris without the introduction of evidence not to be found in the contract sued on; hence it is perfectly clear that the court had no jurisdiction to render the judgment without the intervention of a jury. In the case of *Stewart* v. *Sholl,* supra, the suit was upon a foreign judgment, and the court (99 *Ga.* 537, 538) expressly de-

clined "to enter upon a discussion of the doubtful question as to whether a judgment of a court of record can be properly classed as a contract or not," but rested its decision "upon the broader ground, that as to suits upon judgments of courts of record, where no defense is filed which calls in question the validity of the judgment, the right of trial by jury never has existed as a matter of law."

But it is contended by defendant in error that the documentary evidence introduced by him upon the trial of the present case shows that the executor of the will of H. C. Harris was estopped from attacking the validity of this amended judgment. We do not think so. There is nothing in the petition for injunction which shows that it was brought by W. H. Harris as executor of the will of H. C. Harris; and nothing therein which even tends to indicate that it was thus brought, unless it be the words, "Exr. Will H. C. Harris," which appear only once in the petition, and then immediately follow the name of the plaintiff, and, according to a well-settled principle of construction, are to be generally taken as descriptio personæ merely. But even granting that the executor did apply for and obtain an injunction to prevent the enforcement or transfer of the original judgment until the result of other designated litigation was ascertained, upon the ground, among others, that this judgment was against him as the legal representative of the estate of H. C. Harris, we fail to see why this should estop the executor from afterwards insisting that this judgment was not de bonis testatoris and could not be so amended as to make it such. If the executor solemnly admitted in judicio that the judgment was against him in his representative capacity, such admission was in exact accordance with the theory of the plaintiff in execution, and he did not, in consequence thereof, change his course in the slightest degree. So it can not, with any show of reason whatever, be claimed that the plaintiff acted on this admission to his own injury or to the benefit of the estate which the executor represented. The truth of the matter is, as we have already intimated, he did not act upon this admission at all. He was already proceeding along this line, and had indicated no purpose whatever of proceeding upon any other.

It is insisted, however, that there was an estoppel, because, as a result of the injunction proceeding, Gano's hands were temporarily

tied, so that he could neither enforce the judgment against the estate of H. C. Harris nor against W. H. Harris individually, nor sell and transfer the same to a possible purchaser thereof. His hands were already tied so far as the enforcement of the judgment against the estate of H. C. Harris was concerned; for he had no judgment against that estate to enforce. With or without the injunction in question, the judgment was not enforceable against the estate of H. C. Harris. Hence such estate derived no benefit from the injunction, and Gano received no injury therefrom, in so far as the enforcement of the judgment against such estate was concerned. There is nothing in the evidence which tends to show that Gano, but for this injunction, could have sold this judgment, or which even tends to show that he would otherwise have attempted to sell it. The presumption is that, as it stood when the injunction was granted, it could not have been sold as a judgment against the estate of H. C. Harris, and certainly the plaintiff had no legal right to sell it as such.

The suggestion that Gano was injured by the injunction, because it prevented him from enforcing the judgment against W. H. Harris individually, is without force. In the first place, there is no evidence which even tends to show that W. H. Harris had property which was subject to the judgment. In the next place, it is evident that the plaintiff never contemplated enforcing the judgment as a judgment in personam. Even as late as about three and a half years after the injunction was granted, and when presumably it was no longer in existence, the plaintiff was pursuing the theory that his suit was not against W. H. Harris individually, but against him as the executor of the will H. C. Harris, and that the judgment rendered therein was intended to be de bonis testatoris, and accordingly he sought and obtained an amendment to the judgment so as to make it conform in its terms to such theory. Besides, the estate of H. C. Harris would hardly be estopped on the ground that the injunction which the executor obtained was for his own benefit. If W. H. Harris was proceeding as an individual when he applied for and obtained the injunction, then the estate of H. C. Harris was not bound by his acts. If he was proceeding as executor, then the injunction which was granted was in his favor as such, and not in his favor as an individual. Of course the estate could not be bound by any allegation or admission made

by W. H. Harris in the plea filed by him in the suit wherein he was sued solely in his individual capacity. In making the admission (or, more properly speaking, the allegation) relied on, in his answer to the suit against him as an individual, he did not represent the estate, but himself only, and it was made in his own interest and against that of the estate. ·

A deed from the executor to one Hollinshead, conveying the land levied on, dated prior to the levy, was introduced by the plaintiff in execution, for the purpose, as disclosed by the argument here, of showing that the executor had no right, after he had thus disposed of the property, to interpose an affidavit of illegality to the levy. This evidence was irrelevant and immaterial. Upon the trial of an illegality case, the question of title to the property levied on is not involved, and neither side can inject this issue into the case. It was decided in *Zachry* v. *Zachry,* 68 *Ga.* 158, that the defendant in execution could not raise this issue in a ground of his illegality. In *Moore* v. *O'Barr,* 87 *Ga.* 205 (13 S. E. 464), the broader ruling was made, that upon the trial of an illegality case the title to the property levied on is not involved. Hence it was held in that case, that, although the superior court has exclusive jurisdiction of cases involving titles to land, an illegality interposed to the levy upon land of an execution issued from a judgment rendered in a justice's court should be returned to and tried in that court, and that where such an illegality case had been returned and tried in the superior court of the county where the land levied upon was located, the judgment rendered therein by that court was absolutely void, for want of jurisdiction. Illegality is a purely statutory remedy, and the statute provides: "When an execution against the property of any person shall issue illegally, or shall be proceeding illegally, and such execution shall be levied on property, such person may make oath in writing, and shall state the cause of illegality," etc. Civil Code, §4736. Certainly, in the present case, the amended execution was issued against the property of the estate of H. C. Harris, and it was proceeding against the property of that estate; and if it was issued, or was proceeding illegally, the executor representing that estate had, under the provisions of the statute, the right to arrest its progress by affidavit of illegality. Besides, the land was levied on as the property of the defendant in execution, the plaintiff was seeking

to subject it as such, and it did not lie in his mouth to deny that the levy had been made upon property of the defendant.

*Judgment reversed.     All the Justices concur.*