A09A2274. McGEE v. HICKS et al.
(693 SE2d 130)

BARNES, Judge.
Following remand from this court, the trial court granted summary judgment to the former Clerk and a Deputy Clerk of the Fulton County Superior Court in a suit against them by Calvin McGee. McGee remained in prison an extra 22 months because the

Clerk did not transmit his amended sentence to the Department of Corrections (DOC). Because former Clerk Juanita Hicks and Deputy Clerk Geneva Blanton are not entitled to official immunity for this claim against them individually, we reverse.

McGee filed suit against Hicks and Blanton on October 1, 2003, contending that the defendants breached their duty to notify the DOC of his amended sentence, as required by OCGA § 42-5-50 (a). Because of this breach, McGee alleged, he was incarcerated beyond the end of his sentence, from May 27, 2001 to March 25, 2003. The defendants answered, asserting as affirmative defenses "judicial, official and discretionary immunity," McGee's own negligence, his failure to join an indispensable party, the running of the statute of limitation, laches, and waiver. They neither admitted nor denied for lack of information that McGee's sentence should have ended May 27, 2001, or that the order providing so was filed on July 20, 2000, by Blanton. They denied they had a nondelegable duty to notify the DOC of the amended sentence, that they breached that duty, or that McGee remained incarcerated as a result of the breach.

We reviewed this case previously on interlocutory appeal after the trial court denied the defendants' motions to dismiss on the pleadings. *Hicks v. McGee*, 283 Ga. App. 678 (642 SE2d 379) (2007). We held that McGee's claim was not barred by the expiration of the statute of limitation because the defendants had committed a continuing tort against him that did not end until he was released. Id. at 679 (1). We also held that, while the defendants were entitled to sovereign immunity to the extent they were sued in their official capacities, they were not entitled to official immunity on McGee's claim against them in their individual capacities. That claim was that the defendants failed to perform the ministerial act of communicating McGee's sentence to the DOC. Id. at 680 (2) (b), (3).

On remand and following discovery, the defendants moved for summary judgment, arguing again that McGee's claim was barred by the expiration of the statute of limitation and that they were entitled to official immunity. McGee moved for partial summary judgment on official immunity. After noting that this court had already decided the statute of limitation issue, the trial court found that "the clerk of the Court performed her duties as she was trained to do with any type of non-sentencing Order" and neither Hicks nor Blanton breached her ministerial duties. Thus, the court held that the defendants were entitled to official immunity and granted their motion for summary judgment.

On appeal, McGee argues that this court already determined that the defendants were not entitled to official immunity, and thus under the law of the case rule the trial court could not find differently. The "law of the case rule" used to apply to any rulings by

any court in a case, but has been formally abolished as to trial court rulings. Appellate court rulings, however, remain binding in all subsequent proceedings, OCGA § 9-11-60 (h); *Continental Corp. v. Dept. of Transp.*, 185 Ga. App. 792, 793 (1) (366 SE2d 160) (1988), unless the evidentiary posture of the case changes. *May v. Macioce*, 200 Ga. App. 542, 544 (409 SE2d 45) (1991). The evidentiary posture changes to bar application of the law of the case rule in two situations: (1) amended pleadings raise a new issue not addressed by the appellate court; or (2) additional evidence is supplied after the original evidence was found to be insufficient. *Davis v. Silvers*, 295 Ga. App. 103, 106 (670 SE2d 805) (2008).

McGee did not amend his complaint and Hicks and Blanton did not amend their answers, so application of the law of the case rule is not barred due to new issues this court did not address. The defendants argue instead that application of the rule is barred because the evidentiary posture of the case changed when the parties submitted evidence to support their summary judgment motions. But we did not previously hold that the evidence was insufficient to establish the defendants' official immunity. We held the action of transmitting a sentence amendment to the DOC was ministerial.

> The doctrine of official immunity, developed primarily in Georgia through case law, provides that while a public officer or employee may be personally liable for his negligent ministerial acts, he may not be held liable for his discretionary acts unless such acts are wilful, wanton, or outside the scope of his authority. [Cit.] A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed. [Cit.]

*Hicks v. McGee*, supra, 283 Ga. App. at 679-680. We then held the defendants were not entitled to official immunity on McGee's claim that they "failed to perform the ministerial act of communicating his sentence to the Department of Corrections." Id. at 680 (2) (b).

Upon remand, the trial court found that "the clerk of the Court performed her duties as she was trained to do with any type of non-sentencing Order" and granted summary judgment to the

defendants. The court further found that

> the original Order contained no language indicating that the Order was a reduction or modification of a sentence, the Order was not accompanied by a final disposition form and the Order did not direct the Clerk of the court to send notification to the Department of Corrections for a sentencing reduction.

The trial court erred, however, in concluding that the July 20, 2000 order amending McGee's sentence was a "non-sentencing order." That order changed McGee's release date. In it, the court granted McGee's motion seeking credit for the time he spent on probation, found that McGee was entitled to 25 months' credit, noted that his present maximum release date was June 27, 2003, and concluded that his new maximum release date was May 27, 2001. The statute does not provide that the clerk shall forward amended sentences to the DOC only if they are filed in a particular form using particular language, and on remand the defendants submitted no evidence that supports the trial court's conclusion that the July 20, 2000 document was a "non-sentencing order." Although the defendants' evidence raises questions about how and why they did not comply with the statute, it does not change the fact that they failed to do so.

The record shows Blanton was a temporary employee at the clerk's office from February 1999 to April 2000, when she became a permanent employee. She had performed various duties in the clerk's office, and on July 20, 2000, she file-stamped the order amending McGee's sentence, signed it, and placed it in another pile for further processing. From there, she testified, someone else would "put it into the book then the Data Entry Department would process it." She did not know how anyone could determine whether the document was handled properly after she stamped it, and she had no duties regarding the document other than to file-stamp it and put it somewhere for the next person to handle. The record includes no evidence establishing procedures in the clerk's office for dealing with an order in a criminal case after it was file-stamped.

Hicks testified that she did not personally train Blanton or anyone in her office on how to deal with documents and did not know whether Blanton had been trained to deal with particular documents because she relied on her managers to handle the training. In fact, Hicks herself did not know the details of the clerk's office procedures for forwarding amended sentences to the DOC or details of other office procedures, although she had a copy of each of her eight managers' procedural manuals for the procedures developed before

134

she was elected clerk. She did not know what Blanton should have done with the order after stamping it, but sentencing documents were usually delivered by the court managers to one particular employee, who was trained to handle them properly. She did not discuss how orders in criminal cases were supposed to be handled generally. She did not know what documents the employee who received sentences would forward to the DOC, and when asked who she thought was responsible for the failure to notify the DOC of McGee's amended sentence, Hicks replied,

> I really don't know. In terms of sending paperwork to them I would say the clerk's office is responsible for the paperwork. But Mr. McGee also had a lawyer; there was the judge in the case that sent the letter to them. And so there were a number of failures — the clerk's office along with perhaps his attorney and perhaps even the Judge; I can't say.

Hicks did not consider herself personally responsible, although she considered herself responsible as the head of the office. She did not consider Blanton responsible because she had not been there long, "did not have the duties," and was only filling in. When asked if she thought anyone else in her office was responsible, she said, "With the way that this was handled from the court down, I can't say that — because they never saw it. I'm not going to say that I consider them responsible."

One of Hicks' employees conducted an investigation into this matter and Hicks testified that the investigator "found in this case that procedures were not followed," because "the order was brought down by a law clerk that was new to the job that did not give it to the sentence area but took it to the general area. In the general area the document was not read and was not given to a supervisor as it could have been." The same employee also investigated why another man was not released from prison under similar circumstances and determined that the fault lay in that case with a temporary employee. In this case, Hicks knew the investigator interviewed three people and possibly the judge, but did not know who else was interviewed, whether any of those interviewees still worked at the clerk's office, whether the investigator took written statements, or whether the investigator talked with the county attorney's office before presenting Hicks with her report.

Counsel for the defendants argued during the summary judgment motions hearing in this case that McGee was negligent in failing to contact the DOC himself, although it is clear that at the time of the hearing, counsel was not well acquainted with the facts of this case. For example, he argued that McGee was "fully aware" he

was "supposed to get out March 27, 2001 [sic]" and knew as early as January 29, 1998, "that no order went to the Department of Corrections," although the record indicates no order was drafted until July 2000. He argued that McGee knew at least as of the habeas hearing when he should be released, and appeared to argue that the trial court (as opposed to the habeas court) said during the habeas hearing, "I'm going to enter an order setting your release date from May 27, 2001." He argued that McGee's attorney prepared the order with the wrong name on it and then corrected it, although McGee testified he did not know the public defender who prepared that order. Most astonishing of all, counsel for the defendants argued during the summary judgment hearing that McGee did not try hard enough to get out of jail. He said:

> Now, Mr. McGee, Your Honor, knows that this order didn't get sent to the Department of Corrections and he knows it in 2000. So, on the 27th of May when he is supposed to get out, Mr. McGee does nothing. He files all these other briefs, motions, and pleadings but on the day he's supposed to get out, Judge, he at least knows by that day that the order doesn't get sent to the Department of Corrections, and he does nothing for almost three years.

This argument is at best puzzling, particularly in light of the extensive efforts McGee made throughout his incarceration to challenge both his revocation and the length of his sentence. (See the appendix for a list of those efforts.)

The clerk of court is an elected official who bears the responsibility for ensuring that she, or a deputy clerk on her behalf, performs the statutory duties she is required to perform. OCGA §§ 15-6-50; 15-6-59 (b) (powers and duties of appointed deputy clerks are same as clerk's). In a suit on the official bond of the clerk of the superior court, for example, the Supreme Court of Georgia held the clerk was responsible for failing to enter on the docket an attachment levied and filed with him, even absent a request to do so and even though he acted in good faith. *Stewart, Dunholter & Co. v. Sholl*, 99 Ga. 534 (26 SE 757) (1896). The court held:

> The law imposes upon [the clerk] this duty for the protection of plaintiffs suing out attachments. Its performance is not left to his discretion, nor is it made dependent upon a direction from the parties at interest that he comply with this plain mandate of the law. The statute is itself imperative, and if he neglect the duty thus imposed, and another by reason of his failure to perform it suffers injury, the

person injured may recover against the clerk and the sureties on his official bond.

Id. at 535-536. See also *Neal-Blun Co. v. Rogers*, 141 Ga. 808, 811 (2) (82 SE 280) (1914) (clerk failed to record lien within time allowed by law).

OCGA § 42-5-50 (a) provides that the "clerk of the court shall notify the commissioner of a sentence within 30 working days following the receipt of the sentence and send other documents set forth in this Code section." The clerk did not notify the DOC of McGee's sentence reduction, and as a result, he spent an extra 22 months in jail. While the defendants point to many reasons to explain this failure, the statute is imperative. Its performance is neither discretionary nor dependent upon a direction from the parties at interest. We previously ruled in this case that the defendants were not entitled to official immunity for failing to perform the ministerial act of communicating McGee's sentence to the DOC, *Hicks v. McGee*, 283 Ga. App. at 680 (2), and nothing in the record following remand changes that ruling. Accordingly, we reverse the trial court's grant of summary judgment to the defendants.

*Judgment reversed. Andrews, P. J., and Doyle, J., concur.*

## APPENDIX

1. *March 3, 1997.* McGee's First Offender status was revoked and he was sentenced to twenty years, to serve seven, and given credit for time in jail.
2. *March 25, 1997.* McGee filed a pro se "motion for new trial" contending, among other things, that the trial court should have given him credit for time served on probation.
3. *April 18, 1997.* McGee filed an amended "motion for new trial" seeking probation credit.
4. *May 5, 1997.* McGee's public defender filed a motion seeking the probation credit.
5. *September 15, 1997.* In a motion hearing at which McGee was not present, the public defender, State, and trial court agreed McGee was entitled to probation credit, but the public defender said he would submit an order to the court once he determined how much credit McGee should receive. No such order appears in the record.
6. *January 29, 1998.* Court of Appeals dismissed McGee's "out-of-time application for appeal" because he did not submit the order from which he was appealing.

7. *February 13, 1998.* Court of Appeals denied McGee's motion for reconsideration.

8. *May 22, 1998.* Supreme Court of Georgia denied McGee's application for certiorari.

9. *June 5, 1998.* Supreme Court of Georgia denied McGee's motion for reconsideration.

10. *November 18, 1998.* McGee wrote to clerk's office, apparently having received a copy of the index of his case, with questions about his sentencing date.

11. *January 14, 1999.* McGee's request for transcripts and a copy of his sentencing order received in clerk's office.

12. *May 10, 1999.* McGee petitioned the trial court to correct his sentence, arguing his First Offender status should not have been revoked due to technical probation violations.

13. *June 18, 1999.* McGee petitioned the Tattnall County Superior Court for a writ of habeas corpus, noting that after a hearing September 17, 1997, the sentencing court granted him credit for his probation time.

14. *November 1, 1999.* McGee filed in the trial court a "Motion to Produce Signed Order for Successful Probation Time Toward Sentence."

15. *July 15, 2000.* Tattnall County Superior Court held a hearing on McGee's habeas petition and the State submitted a copy of a signed order granting probation credit, but the name was wrong. The habeas court left the record open so the correct order could be filed.

16. *July 17, 2000.* Order granting probation credit filed in clerk's office, but with wrong name.

17. *July 20, 2000.* Amended order correcting the name and granting McGee probation credit was filed in clerk's office.

18. *July 20, 2000.* Trial court signed an amended order prepared by a public defender granting McGee credit for probation time and finding that his last possible release date was May 27, 2001.

19. *November 14, 2000.* Habeas court order issued which did not address the issue of credit for probation time, which appeared to have been resolved already.

20. *January 30, 2002.* Supreme Court of Georgia denied McGee's application to appeal the habeas decision.

21. *March 8, 2002.* McGee filed a "Motion for Entry of 'Nunc Pro Tunc' Order Stating the Reasons and Facts Relied Upon for Revocation for Appellate Review."

22. *May 2, 2002.* Clerk's office received McGee's letter and pauper's affidavit seeking copies of his case docket index, several motions, and his plea transcript, to perfect his pending motion for a "nunc pro tunc order."

23. *October 1, 2002.* McGee applied for appointed counsel because he had not been issued an appealable order and could not afford to hire counsel.

24. *October 1, 2002.* McGee filed a "Notice of Speedy Trial Violation," noting that his motion for new trial had not been ruled on in five years, and that "after numerous attempts to obtain an appealable order, Defendant has now sought remedy by entry of 'Nunc Pro Tunc' order filed March 8, 2002."

25. *March 5, 2003.* Trial court sent by hand delivery to the Department of Corrections a certified, file-stamped copy of the July 20, 2000 order amending McGee's sentence and giving him credit for 25 months on probation.

26. *March 25, 2003.* McGee was released from prison.

DECIDED MARCH 25, 2010 —

*Goldberg & Cuvillier, Ralph S. Goldberg,* for appellant.
*Robert D. Ware, Y. Soo Jo, Kaye W. Burwell,* for appellees.